## Fulton et al. *versus* Central Bank of Pittsburgh.

1. After dissolution a liquidating partner may bind his late co-partners in borrowing money to pay the debts of the late firm.

2. The authority to act as a liquidating partner does not require an express and specific appointment. Where one so acts with the knowledge of his late co-partners, their permission may be presumed, and as to third persons they may be bound by his acts.

3. A cross-examination should be confined to matters in relation to which the witness has been examined, or to such questions as may tend to show his bias or interest.

4. The defendants in their defence had neither alleged nor attempted to prove usury. On the cross-examination of plaintiffs' witness, who was testifying in rebuttal, they offered to show that usurious interest had been charged them. *Held*, that this was an attempt to introduce a new and distinct defence, and was clearly erroneous.

November 10th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county :* Of October and November Term 1879, No. 183.

Assumpsit by the Central Bank of Pittsburgh against Fulton, Marvin & Co.

This was an action by the bank against the defendants, late partners doing business under the firm of Fulton, Marvin & Co., as the makers of two notes, and the endorsers of a third note of which the following are copies, viz. :

"$4000.                    Pittsburgh, June 29th 1875.

Four months after date we promise to pay to the order of Jacob H. Walter four thousand dollars, at the Central Bank, without defalcation, value received.

(Signed),     FULTON, MARVIN & Co.

(Endorsed,)

     JACOB H. WALTER."

[Fulton et al. v. Central Bank of Pittsburgh.]

" $2500.                              Pittsburgh, July 6th 1875.

Four months after date we promise to pay to the order of Jacob H. Walter twenty-five hundred dollars, at the Central Bank, without defalcation, value received.

(Signed),        FULTON, MARVIN & CO.

(Endorsed),
     JACOB H. WALTER,
     FULTON, MARVIN & CO."

" $800.                              Pittsburgh, November 29th 1875.

Thirty days after date we promise to pay to the order of Fulton, Marvin & Co., eight hundred dollars, at the Central Bank, without defalcation, for value received.

(Signed),        D. R. BOWMAN,
(Endorsed),                          J. B. WILLIAMS.
     FULTON, MARVIN & CO."

The notes for $4000 and $2500 were in the handwriting of Jacob H. Walter, and the signature of the firm name to the notes and the endorsement of the firm name upon the $800 note were in his handwriting. The $800 note was shown to be a renewal of a previous note of like character, except that it ran for a longer period and was for $1000. It was shown that the Central Bank of Pittsburgh had received all said notes from Jacob H. Walker at or about their respective dates. It appeared that the Central Bank of Pittsburgh at the dates respectively of the $4000 and $2500 notes and the original of the $800 note, and at the times the same were respectively received by it from Walter, was a private banking co-partnership, of which Walter was a partner and managing director, he being a member of its discount committee. It remained a private co-partnership until September 1875, when it purchased a charter, viz.: " The Act to Incorporate the Western Savings Bank and Safe Deposit Company of Pittsburgh," and procured a decree of court changing this corporate title to " The Central Bank of Pittsburgh," and thereafter, without any change in its membership or otherwise, it continued the business at the old stand and with the old officials.

The firm while in existence carried on the oil refining business at the Tarentum Oil Works. About April 1st 1873, they sold out their works. The plaintiff claimed that Walter was the liquidating partner of the firm, and as such had the right to make and endorse the several notes in suit. The defendants denied that he was the liquidating partner, and this was one of the principal questions in the case. Defendants testified that the said notes were made and negotiated without their consent or knowledge, and the first they knew of the existence thereof was about the time of their maturity; that they were not made or negotiated in the course of the business of the firm of Fulton, Marvin & Co., but long after

11 NORRIS—8

its dissolution; that as early as the spring of 1873, the firm sold their works and all their other property, ceased all business and dissolved; and that Jacob H. Walter had no authority to make, endorse or negotiate the said notes or any of them.

In rebuttal, Jacob H. Walter was examined as to the alleged indebtedness of Fulton, Marvin & Co., to his banking co-partnership—the Central Bank—and in respect to the consideration for the two notes for $4000 and $2500 in suit. He testified that the $2500 note was the last part renewal of a note originally for $5000, which his banking firm had discounted for Fulton, Marvin & Co., and had carried for several years by renewals every four months.

Upon the cross-examination of Mr. Walter, the defendants proposed to interrogate him further in respect to said original note for $5000, and the renewals thereof, and to show that these renewals had been at extravagant and usurious rates of interest, and if the usury was abated there was nothing due upon that note.

To this cross-examination the plaintiff objected, and the court sustained the objection.

The third point of the defendants, with the answer of the court thereto, was as follows: That in the absence of express authority from his late co-partners Jacob H. Walter—unless he was liquidating partner—could not bind the late firm of Fulton, Marvin & Co. by making the notes of $4000 and $2500 in suit.

Ans. " Affirmed, with the explanation that it does not require an express appointment or authority to constitute a member of a dissolved firm a liquidating partner, and one may become such by permission or tacit consent of the other partners, and when one acts as such with the knowledge of the others, and they raise no objection to his doing so, the jury should infer authority to act so far as third persons are concerned."

In the general charge the court, Stowe, P. J., inter alia, said: " Unless Walter was the liquidating partner of Fulton, Marvin & Co., plaintiff cannot recover; but if the jury believe he was permitted by the other partners to go on, after the dissolution of Fulton, Marvin & Co., acting as the one whose right and duty it was to settle the affairs of the late firm, as the evidence seems to me to indicate, he is to be held and treated as the liquidating partner, so far as this suit is concerned."

Verdict for plaintiff for $8833.55; and, after judgment, defendants took this writ, and alleged, inter alia, that the court erred in not permitting defendant to cross-examine Walter, as set forth above, in refusing defendant's third point, and in the portion of the charge noted.

*A. M. Watson* and *M. W. Acheson*, for plaintiffs in error.

*A. M. Brown* and *D. T. Watson*, for defendant in error.

[Fulton et al. *v.* Central Bank of Pittsburgh.]

Mr. Justice MURCUR delivered the opinion of the court, January 5th 1880.

It is well-settled that after dissolution, a liquidating partner may bind his late co-partners in borrowing money to pay the debts of the late firm.   He may renew an accommodation endorsement, and give notes to liquidate the partnership indebtedness: Dundas *v.* Gallagher, 4 Barr 205; Robinson *v.* Taylor, Id. 242; Brown *v.* Clark, 2 Harris 469; Ward *v.* Tyler, 2 P. F. Smith 393; Lloyd *v.* Thomas, 29 Id. 68.   The authority to act as a liquidating partner, does not require an express and specific appointment.   When one so acts with the knowledge of his late co-partners, their permission may be presumed, and as to third persons, they may be bound by his acts.   The court stated the law correctly.   We are not furnished with the full evidence; but will not assume it to have been insufficient to carry the question of authority to the jury.

The seventh assignment is to the rejection of certain evidence in cross-examination.   A cross-examination should be confined to matters, in relation to which, the witness has been examined in chief, or to such questions as may tend to show his bias or interest. Hopkinson et al. *v.* Leeds, 28 P. F. Smith 396.   It was well said in that case by Mr. Justice WILLIAMS, " to permit the defendant under the guise of cross-examination, to give evidence in chief, is not only disorderly, but unfair to the plaintiff."

The attempt in the present case, was made under circumstances more than usually objectionable.   In making their defence, the plaintiffs in error had not proved or alleged usury.   They did not claim that any had been received by the corporation defendant in error, or by the association from which the bank obtained the notes.   They had put their defence on other grounds and rested. When the defendant in error had called Walter in rebuttal, then the plaintiffs in error sought in his cross-examination, to introduce this new and distinct defence.

Much must be left to the discretion of the judge, as to the time and order of introducing evidence.   The tendency of the evidence proposed by the cross-examination, if it had any effect, was to re-open the case, and involve an inquiry into matters not alleged before.   We do not think the incomplete evidence furnished, will justify us in holding, that the learned judge committed such an error in rejecting this evidence, as to call for a reversal.   We discover no error in the other assignments.

Judgment affirmed.