# Longenecker *versus* Pennsylvania Railroad Co.

1. In the trial of a cause it is a preliminary question of law for the court whether there is any evidence that ought reasonably to satisfy the jury that an alleged fact is established.

2. If there is evidence from which the jury can properly find the question for the party on whom the burden of proof rests, it should be submitted: on the other hand, if the evidence is wholly insufficient to justify the jury in thus finding, and the court would be justified in setting aside the verdict if they did so find, the testimony should be withdrawn from the consideration of the jury.

3. Upon a state of facts admitted or proved by direct and uncontradicted testimony, it is the province of the court to pronounce the law applicable thereto; but, when alleged facts are the subject of inference from other facts and circumstances shown by the evidence, it is the exclusive province of the jury to consider the testimony and ascertain the facts under proper instructions from the court.

4. Whether the ringing of a locomotive bell, without blowing the whistle, is a sufficient warning of the approach of a train to a public road-crossing depends on the circumstances, of which generally in actions for negligence it is for the jury to judge.

5. *Semble*, that in the case of trains running at high speed over public

[Longenecker v. Penna. R. R. Co.]

crossings in rural districts, there is no proper substitute for the steam whistle as a warning of approach, and that, under certain circumstances, the failure to blow the whistle may be negligence *per se.*

6. *Semble,* that negative testimony of witnesses who were in a position to hear proper warnings of the approach of a train to a road-crossing, if such warnings had been given, but who heard none, should be submitted to the jury upon the question whether the presumption that the railroad company was not in fault had been rebutted.

7. The testimony of a witness who, being near the crossing was expressly listening for train warnings, and heard none, is of a higher grade than mere negative testimony, and in connection with the negative testimony of other witnesses, is sufficient to require the submission of the evidence to the jury.

8. In an action against a railroad company to recover damages for the killing of the plaintiff's son, twelve years of age, by a train running into a wagon which he was driving at a public road-crossing. it appeared from the plaintiff's evidence that the locomotive bell had been rung about half a mile from the crossing, and that the whistle was blown immediately before the collision occurred. Several witnesses who were in the neighborhood of the crossing testified that they heard no bell or whistle prior to the whistle which was immediately followed by the accident; and one witness testified that being near the crossing with a skittish horse, he was listening for train warnings but heard none. There was no evidence of contributory negligence by the deceased. The court entered a nonsuit, on the ground that there was no evidence of negligence by the defendant: *Held,* to be error.

9. Matter of defence, not pertinent to the examination-in-chief of a witness cannot be brought out against objection, in cross-examination.

February 12, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK J. absent.

ERROR to the Court of Common Pleas of *Chester county:* Of January Term, 1884, No. 159.

This was an action of trespass on the case, by Henry E. Longenecker, and Mary his wife, against the Pennsylvania Railroad Company, to recover damages for the death of the plaintiff's minor son, caused, as alleged, by the negligent running of a train on the defendant's railroad.

On the trial, the evidence on behalf of the plaintiffs was to the following effect: On the morning of October 10, 1882, Harry Longenecker, twelve years of age, was driving a team of mules in a lime wagon on the public road where it crosses at grade the defendant's railroad, about half a mile west of Berwyn Station, which is east of Paoli. At the crossing in question a high embankment rises on both sides of the railroad, and runs westward for about three quarters of a mile. No one saw the boy or the wagon while he was in the act of approaching or going upon the crossing. While in the act of crossing, the wagon was struck by a train, and the boy was killed.

[Longenecker *v.* Penna. R. R. Co.]

The engineer was the only person who saw the boy and wagon prior to the accident. He was called by the plaintiffs and testified that it was a regulation of the company not to whistle in approaching crossings east of Paoli, except in case of special danger of accident, but that notice of the approach of trains should be given by ringing the bell a quarter of a mile from a crossing or station.

Upon cross-examination defendant's counsel asked the witness:

Q.: "You said you were the engineer of the milk train that struck this boy; will you tell us whether you rang the bell before you struck the wagon?"

Objected to; objection overruled; exception. (First assignment of error.)

The witness answered that he rang the bell near half a mile from the crossing, to warn repair men on the track, and the fireman was ringing the bell when he saw the wagon on the track and whistled, but he could not say at what point the fireman began to ring, nor whether he rang it a quarter of a mile from the crossing.

Several witnesses who were in the neighborhood of the crossing at the time in question testified that they heard no bell, and no whistle prior to a sharp whistle which was almost instantly followed by the crash of the locomotive striking the wagon. One witness testified that he had a skittish horse tied in the road near the crossing, while he was delivering flour to a customer, and he was paying particular attention to listening for any train signal, so that he could start for his horse if he heard a train coming, but he heard no warning prior to the shrill whistle which was almost immediately followed by the crash of the collision. He said that if a bell had been rung on the engine prior to the whistle, he had no doubt that he would have heard it; that on another occasion, under similar circumstances, he had heard the bell distinctly as a warning of the approach of the same train.

At the close of the plaintiff's case the defendants moved for a compulsory nonsuit.

THE COURT. "It does not appear to the court that there is evidence to sustain a verdict, if rendered, for the plaintiff. In regard to the point as to whether a railroad company could substitute the ringing of a bell for a whistle, as it is a regulation of the company to use a bell east of Paoli, instead of blowing a whistle, until the Supreme Court say that they cannot substitute the ringing of a bell for the blowing of a whistle, we will hold that to be sufficient. The motion for a compulsory nonsuit is granted.".

A rule to take off the nonsuit was discharged by the court.

[Longenecker v. Penna. R. R. Co.]

The plaintiffs took this writ of error, assigning for error, inter alia, (1) the admission of the question on cross-examination of the engineer, above noted, and (5, 6,) the refusal of the court to take off the judgment of nonsuit.

*R. Jones Monaghan* and *R. E. Monaghan* (*James Monaghan* with them), for the plaintiffs in error.

*John J. Pinkerton*, for the defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, October 6, 1884.

It may be safely assumed that no purely legal question of contributory negligence was raised by the evidence in this case. The testimony tended to prove that, at the time of the accident, plaintiffs' minor son was engaged in driving his father's team on the public road that crosses defendant company's railroad at grade, half mile west of Berwyn, in one of the most densely populated rural districts of the county. The road in question, being the main thoroughfare between Norristown and West Chester, is much travelled by the public. At the point of crossing there are three tracks on which trains are frequently running in each direction: and the railroad is there so located and constructed as to render the crossing more than ordinarily dangerous, for the reason that the view of the track westward is so obstructed, on both sides, by banks of such height that trains approaching from that direction cannot be seen by travellers on the public road until they are almost on the track. Deceased was last seen alive by his father in the field south of the crossing and before he entered the public road. It does not sufficiently appear that any one saw him as he approached or went upon the railroad track; but, immediately after the collision his lifeless remains were found along side the railroad track. There is nothing in the fact or circumstances of the case, so far at least as they are developed by the testimony, to warrant the court in saying, as matter of law, that deceased was guilty of contributory negligence. In the absence of evidence, it cannot be assumed that in attempting to cross the railroad track he did not exercise all the precautions that a due regard for his own safety and that of others required. On the contrary, the presumption is that he did. As was said in Pennsylvania Railroad *v.* Weber, 26 P. F. Smith, 157, " the common law presumption is that every one does his duty, until the contrary is proved ; and, in the absence of all evidence on the subject, the presumption is that the deceased observed the precautions which the law prescribes before he attempted to cross the railroad. It is true,

that when the plaintiff's own evidence discloses contributory negligence there can be no recovery; but, if it does not, the burden is upon the defendant to disprove care, and in such case the question is for the jury." In cases where there is no direct or positive evidence of contributory negligence, it sometimes occurs that the circumstances in evidence are sufficient to warrant the inference of such negligence; but such inferences of fact are always for the jury and not for the court.

Upon a state of facts, admitted or proved by direct and undisputed testimony, the court may pronounce the law applicable thereto; but, when alleged facts are the subject of inference from other facts and circumstances shown by the evidence, it is the exclusive province of the jury to consider the testimony and ascertain the facts under proper instructions from the court. If, therefore, there was any testimony in this case from which it might have been fairly inferred, that plaintiffs' son was guilty of negligence that contributed to his injury, it should have been submitted to the jury. We are not now called upon to say whether there was such evidence or not; we merely decide that there was not such evidence as would warrant a compulsory non-suit on the ground of contributory negligence.

In view of the nature of the crossing, it was undoubtedly the duty of the defendant company to give proper and timely warning of the approach of its train; and in the absence of evidence to the contrary the presumption, as in the case of the deceased, is that it did its duty in that regard. Plaintiffs' contention is that the presumption was successfully rebutted by evidence that should have been submitted to the jury, and from which they would have found that the only warning alleged to have been given was neither sufficient nor timely. The most that is claimed by the learned counsel for defendant is that the approach of the train was signaled by ringing the bell about 2150 feet from the crossing and again about 1200 feet therefrom, and by blowing the steam-whistle when the engine was half a square from the crossing, and in connection therewith applying the air brakes to avoid the accident. Assuming the facts to be as he claims, did they justify the learned judge in holding, as matter of law, that such warning was sufficient, and consequently defendant was not chargeable with any neglect of duty in that regard? We think not. Under some circumstances the ringing of a bell may be a sufficient warning, but we have never held it is a proper substitute for the steam-whistle in the case of trains running at a high rate of speed over public crossings in rural districts. As was said in Railroad Co. *v.* Stinger, 28 P. F. Smith, 219,

227, "the steam-whistle is one of the recognized methods of signaling the approach of a train. Its universal use upon railroads is a strong argument in favor of its efficiency. It is shrill and piercing; can be heard for a great distance and can be mistaken for nothing else. . . . . . Where trains are passing through the built-up portions of towns and cities it is not needed nor often used. In such cases they move slowly and the ringing of a bell sufficiently answers the purposes of an alarm, and is not so likely to frighten horses. But, where it is necessary to warn crossings or bridges at a distance in advance of the train, no sufficient substitute has yet been found for the whistle. It can be heard in any condition of wind or weather."

Again in the same case, it is said, if the engineer had "omitted to give such warning, and by reason thereof the plaintiff had been struck and injured by the train, we should have been compelled to say, under the authority of our own cases, that such omission was negligence *per se.*" Other authorities, to the same effect, might be cited, but it is unnecessary. We do not intend to say that ringing the bell was, under the circumstances, an insufficient warning. We do decide, however, that it was not a question of law for the Court, but one of fact for the jury, under all the evidence.

It can scarcely be pretended that the Court was warranted in holding, as a matter of law, that sounding the whistle, immediately before the collision at the crossing, was a sufficient warning. The result tended to prove the contrary, and there was also testimony tending to show that the sound of the whistle and crash of the collision were almost simultaneous; that, practically, the sounding of the whistle was notice of nothing except that the collision had occurred. This branch of the case must then rest on the sufficiency of the warning given by ringing the bell nearly half a mile west of the crossing and again about a quarter of a mile therefrom. Assuming that warning was thus given, we think it was error to hold, as matter of law that, under the circumstances, it was sufficient. The most that the defendant, on its own showing, can reasonably claim is that it was a question of fact for the jury. But, it was neither admitted nor shown by undisputed evidence that the bell was rung as claimed by defendant's counsel. Several witnesses, who claimed to have been in a position to hear it if it was rung, testified they did not hear it. It may be well said, this is merely negative testimony and of little weight; but, one of the witnesses testified, in substance, that he was quite near the crossing, and, for a particular reason which he stated, was listening for a signal, and if a whistle had been sounded or a bell rung before the train reached the crossing

he would undoubtedly have heard it. This evidence could not be ignored. In connection with the testimony of other witnesses it was sufficient to carry the question of fact to the jury. The evidence furnished by their testimony was more than a mere *scintilla*, and the testimony of the witness who said he was listening for a signal is of a higher grade than mere negative testimony: Kelly *v.* Railroad Co., 6 Am. & Eng. R. R. Cas., 95.

As we have heretofore held, the preliminary question of law for the Court undoubtedly is, not whether there is literally no evidence, or a mere *scintilla*, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established. If there is evidence from which the jury can properly find the question for the party on whom the burden of proof rests, it should be submitted; on the other hand, if the evidence is wholly insufficient to justify the jury in thus finding, and the court would feel bound to set aside their verdict if they did so find, the testimony should be withdrawn from the consideration of the jury: Hyatt *v.* Johnston, 10 Norris, 196. In view of the testimony in this case we are of opinion that it does not fall within the latter branch of this rule, and hence the question of negligence, in not giving sufficient and timely warning of the approach of the train, should have been submitted to the jury for their determination, under all the testimony before them. The 5th and 6th specifications are sustained.

There was also error in the matter complained of in the first assignment. Neither the purpose for which the witness was called, nor the scope of the examination in chief justified the so called cross examination that was excepted to. The result was that, under an erroneous claim of cross examination, the defendant was permitted to inject part of its defence into the plaintiffs' case, and then use the evidence as a basis for the compulsory nonsuit. As was recently said in Hughes *v.* Westmoreland Coal Company, 8 Out., 207, " Where the defendant is improperly allowed to cross-examine the plaintiffs' witness and educe matter of defence, the jury should consider the testimony so drawn out as if the witness had been called and examined in chief on the part of the defendant. Under such circumstances it is error for the court to order a nonsuit on the ground that plaintiffs' own witness had testified to matter constituting a good defence."

We are not prepared to say there was any error in rejecting the offers of testimony complained of in the 2nd, 3rd and 4th specifications and hence they are not sustained.

The reasons that induce us to reverse the judgment of nonsuit and remand the case for re-trial are sufficiently indicated

[Lawrence *v.* Lawrence.]

in what has been said, and hence it is unnecessary to add anything thereto.

> Judgment reversed and a venire facias de novo awarded.