# E. Bradford Clarke Company, Limited, Appellant, v. Railroad Company.

*Negligence—Railroads—Grade crossing—Evidence.*

In an action against a railroad company to recover damages for the destruction of a team and wagon at a grade crossing, it is proper to permit two men who had driven over the crossing immediately before the accident, and were only 150 feet away when the collision occurred, to testify that no whistle was blown nor bell sounded by the approaching train.

The witnesses were in a position where they could have heard, and would be likely ordinarily to have heard, the whistle if sounded, and their capacity to hear, their opportunity to hear, and the truthfulness of their narrative were all for the consideration of the jury in determining the question of the defendant's negligence.   It was the province of the jury to weigh this evidence and determine its value.

Where a person drives over a grade crossing on a dark night, and his team and wagon are struck by a passing train, and the driver killed, without any person having seen the accident, the presumption is, that the driver performed his duty in exercising due care before he attempted to cross the track.

*Evidence—Inferences from fact—Province of jury.*

When alleged facts are the subject of inference from other facts and circumstances shown by the evidence, it is the exclusive province of the jury to consider the testimony and ascertain the facts under proper instructions from the court.

*Evidence—Cross-examination—Defense—Nonsuit—Negligence—Railroads.*

On the trial of a grade crossing accident case, where the plaintiff calls a locomotive engineer for the sole purpose of proving the speed of the train, the defendant will not be permitted upon cross-examination of the engineer to prove that the bell was rung and the whistle sounded at a proper distance from the crossing.   Such evidence is matter of defense, and cannot be used against the plaintiff as a basis for a nonsuit.

Argued Nov. 25, 1904.   Appeal, No. 196, Oct. T., 1904, by plaintiff, from order of C. P. Delaware Co., March T., 1903, No. 32, refusing to take off nonsuit in case of E. Bradford Clarke Co., Limited, v. Baltimore & Ohio Railroad Company. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.   Reversed.

Trespass to recover damages for the destruction of a team and wagon.   Before JOHNSON, P. J.

The circumstances of the accident are stated in the opinion of the Superior Court.

*Error assigned* was in refusing to take off nonsuit.

*John McConaghy, Jr.*, for appellant.—The cross-examination of the engineer was improper : Longenecker v. Penna. R. R. Co., 105 Pa. 328 ; Moyer v. Reck, 2 Mona. 256 ; Hughes v. Westmoreland Coal Co., 104 Pa. 207.

Where the plaintiff's testimony is contradictory, so that on part of it he is entitled to go to the jury, and on the other part

he is not, the case must go to the jury, whose province it is to reconcile conflicting statements whether of the same or different witnesses, or to draw the line between them and say which is to prevail: Ely v. P. C. C. & St. L. Ry. Co., 158 Pa. 233; Penna. R. R. Co. v. Fortney, 90 Pa. 323; Citizens' Pass. Ry. Co. v. Foxley, 107 Pa. 537.

In the absence of evidence the presumption is that a person killed at a grade crossing, stopped, looked and listened before attempting to cross, and in an action against the railroad company, it is not necessary for plaintiff to prove affirmatively that he did so. It is only where the inference to be drawn is irresistible that the court can find it as a matter of law: Penna. R. R. Co. v. Weber, 76 Pa. 157; Longenecker v. Penna. R. R. Co., 105 Pa. 328; Ely v. P. C. C. & St. L. Ry. Co. 158 Pa. 233; Fisher v. Ry. Co., 131 Pa. 292.

*W. B. Broomall*, for appellee.—The cross-examination was proper: McNeal v. Pittsburg & Western Ry. Co., 131 Pa. 184.

The testimony furnishes not only direct and positive evidence that the driver did not stop, look and listen, but it furnishes a mathematical demonstration that he did not do so. We have a team 150 feet from the railroad. In a certain time and at a certain speed it will reach the railroad without stopping. The time can be measured by a clock or it may be measured by the time it takes another team to traverse the same distance and moving at the same rate. The speed may be measured by a cyclometer or it may be measured by the speed of another team. In this case the Hansel team and the plaintiff's team were moving at the same rate, because they each move the first seventy-five feet of its course in the same time. While the Hansell team moves its second seventy-five feet without stopping, the plaintiff's team moves its second seventy-five feet and reaches the railroad, and it follows that this also must have been without a stop. Q. E. D. The rule requires a bona fide stopping for a sufficient length of time to afford an observation. No stop of an instant will be sufficient. At a speed of a walking gait the driver would pass over the last seventy-five feet and reach the railroad in thirteen seconds. The time becomes too short to admit of a stop, and this too even if his speed was doubled. "Such stopping, looking and listening must not be

merely nominal or perfunctory, but substantial, careful and adopted in good faith for the accomplishment of this end in view : " Ely v. Pittsburg, etc., Railway Co., 158 Pa. 233.

OPINION BY HENDERSON, J., January 17, 1905 :

No opinion was filed by the learned judge of the court below, and we are, therefore, not definitely advised as to his reasons for granting a compulsory nonsuit. Presumably it was because the plaintiff's evidence failed to establish negligence on the part of the defendant, or disclosed the plaintiff's contributory negligence.

About six o'clock in the evening of December 15, 1902, a servant of the plaintiff in charge of a team and wagon, was driving along a public highway which crossed the defendant's track at grade between Moores and Morton. A train coming from Philadelphia struck the team on the crossing, killing the driver and one of the horses, causing injury to the other horse, and destroying the wagon. Two witnesses were called by the plaintiff, who crossed the railroad on the same highway in an opposite direction from that in which the plaintiff's team was traveling. They were in a one horse wagon heavily loaded. When they had gone about seventy-five feet beyond the track, they passed the plaintiff's driver going toward the crossing. The vehicle in which he was riding was a delivery wagon containing some groceries and light wooden boxes. When they had gone about 150 feet from the crossing, they heard the crash of the collision. Neither of the witnesses saw the driver after he passed them, nor did either of them know whether he stopped before reaching the track. The night was very dark, rain and sleet were falling, and the view of the track on the side from which the train came was obstructed by a train of freight cars standing near the road. These witnesses had stopped before coming to the track, and one of them, Reilley, got out of the wagon and went on to the track to ascertain whether a train was coming. The other witness, Hansel, looked as he drove on to the track at Reilley's signal, and observed that no train was within sight or hearing. The plaintiff's allegation was that no warning signal was given of the approach of the train. Upon that point Hansel testified that no whistle was blown and no bell rung ; and Reilley testified that he did not hear any

whistle sounded nor bell rung.   Each of them testified that the
sound of the collision was the first notice they had of the ap-
proach of the train.   The attention of these witnesses had been
called to the subject of a train by the fact that they had just
passed over the crossing, and had been on the lookout for dan-
ger.   They had gone only about 150 feet beyond the crossing
when the collision occurred.   Hansel stated on cross-examina-
tion that he was not listening for signals at the time; but his
proximity to the place of the accident, his attention but a very
short time before the accident to the risk at the crossing, and
his direct evidence that no whistle was blown nor bell sounded,
makes his evidence more than that of a witness who, being in
the vicinity, did not hear the sound.   The testimony of Reilley
is, perhaps, negative evidence on the subject, but nevertheless,
evidence.   Giving to the defendant the benefit of the presump-
tion that its servants performed their duty by blowing the
whistle for the crossing, it is not easy to see why the testimony
of these witnesses was not admissible to rebut that presumption,
nor why the testimony of the two witnesses so near to the
crossing at the time, was not of some value when offered to
overcome the presumption of care on the part of the defendant's
employees.   The witnesses were in a position where they could
have heard, and would be likely ordinarily to have heard, the
whistle if sounded, and their capacity to hear, their opportunity
to hear, and the truthfulness of their narrative were all for the
consideration of the jury in determining the question of the de-
fendant's negligence.   It was the province of the jury to weigh
this evidence and determine its value : Haverstick v. Penna.
R. R. Co., 171 Pa. 101.

No witness was called who knew whether the driver stopped
before going onto the track or not.   The facts of the case,
therefore, bring it within the decision in Penna. Railroad
Co. v. Weber, 76 Pa. 157; Longenecker v. Penna. Railroad
Co., 105 Pa. 328, and other cases upon the same point.   The
presumption is, that the driver performed his duty in exercis-
ing due care before he attempted to cross the track.   There is
no evidence, therefore, from which it can be declared as a
matter of law, that the plaintiff's servant was guilty of con-
tributory negligence.   It is argued by the learned counsel for
the appellee, that because the witnesses Hansel and Reilley

passed the plaintiff's team about seventy-five feet from the track, and had gone about seventy-five feet farther when the accident happened, and that their horse and the team of the plaintiff were traveling at about the same rate of speed, the plaintiff's driver could not have stopped before going upon the track. This line of argument might be valuable in an appeal to the jury, but cannot be accepted as conclusive by the court. The witnesses had one horse and a heavily loaded wagon. The plaintiff's driver had two horses and a light load. How rapidly he moved after he passed Hansel and Reilley no witness knows. He was not observed by them after he passed. There is nothing in the case from which it clearly appears that he did not stop, look and listen. "When alleged facts are the subject of inference from other facts and circumstances, shown by the evidence, it is the exclusive province of the jury to consider the testimony and ascertain the facts, under proper instructions from the court:" Longenecker v. Penna. R. R. Co., 105 Pa. 328.

The plaintiff called the engineer of the train to prove the speed at which it was going at the time of the accident. The defendant was permitted upon cross-examination to introduce evidence relating to the circumstances of the accident, and particularly to prove that the bell was rung and the whistle sounded at a proper distance from the crossing. The witness had not been interrogated in regard to the accident in his examination in chief. His examination related to the speed of the train. Presumably he was the best qualified to testify upon that subject, and by examining him with reference thereto the plaintiff was not put to the peril of a cross-examination involving all the matters material to the defense. It is a well-settled rule, that cross-examination should be limited to matters in which the witness has been examined in chief; or to questions tending to show the bias of the witness: Hopkinson v. Leeds, 78 Pa. 396 ; Fulton v. Central Bank of Pittsburg, 92 Pa. 112.

The evidence was a matter of defense, and was improperly brought out on cross-examination. "To permit a party to lead out new matter constituting his own case, under the guise of a cross-examination, is disorderly, and often unfair to the opposite party:" Hughes v. Westmoreland Coal Company, 104 Pa. 207.

While it may be said that the order of the introduction of evidence is to be left to the discretion of the court below, it cannot be held that where that court permits evidence to be introduced out of order by the defendant, in the course of the introduction of the plaintiff's evidence, the plaintiff is to be affected by such evidence in a motion for a nonsuit. Where evidence is so introduced, it is to be treated as testimony presented as if the witness had been examined in chief for the defendant. A court is not justifiable in directing a nonsuit on the ground that the plaintiff's own witness gave evidence to facts constituting a defense under such circumstances : Hughes v. Coal Company, 104 Pa. 207.

As the case stood when the nonsuit was granted, there was no evidence that the plaintiff's servant was guilty of contributory negligence. There was some evidence of negligence on the part of the defendant in failing to give warning of the approach of the train. The evidence of the engineer developed on the cross-examination was irregularly admitted, and ought not to be considered on a motion for a compulsory nonsuit. In this view of the case, the plaintiff was entitled to go to the jury. The judgment is therefore reversed, and a venire facias de novo awarded.