# Conway, Appellant, *v.* Philadelphia Hardware and Malleable Iron Works.

*Negligence—Master and Servant—Defect in Machinery—Nonsuit.*

In an action by a workman against his employer to recover damages for personal injuries received from his clothing being caught by the projection, from between the cast iron staves of a revolving rumbler, of one of a number of cleats that were undergoing a polishing process within the rumbler, a nonsuit is properly entered where the negligence alleged is that the cleat projected because the usual opening between the staves had been caused by the gradual wearing away of the staves by the sand used in the rumbler, and the only evidence to support this contention is that of the plaintiff himself to the effect that the staves were old and worn out, there being nothing to show that the plaintiff had ever looked at the machine until the moment of the accident, his observation being based on a mere glance given when he was caught and the machine was revolving.

Argued March 22, 1911.  Appeal, No. 59, Jan. T., 1911, by plaintiff, from order of C. P. No. 5, Phila Co., Dec. T., 1903, No. 1,330, refusing to take off nonsuit in case of Michael Conway v. Philadelphia Hardware & Malleable Iron Works.  Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Affirmed.

Trespass to recover damages for personal injuries. Before RALSTON, J.

The facts appear in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*John M. Vanderslice,* with him *Oscar H. Price,* for appellant.

*F. B. Bracken,* of *Loughlin & Bracken,* for appellee.

OPINION BY MR. JUSTICE STEWART, July 6, 1911:

The defendant company in its foundry business operates a series of tumblers, or more properly speaking rumblers, for the cleaning and polishing of small iron castings of its own manufacture.  These rumblers are of cast iron, constructed after the manner of a barrel, and barrel shaped, the staves being about a fourth of an inch apart.  One of the staves is bolted at either end in a way that admits of its removal when the castings are either to be introduced or discharged; the other staves are fixed permanently in place, spaced sufficiently apart to allow the sand within the rumbler when it has served its purpose to escape while the machine is revolving.  Plaintiff was not in charge of any of these machines but was a general helper, employed frequently in gathering up and removing the sand after it had been used, and assisting as well in charging and discharging the machine.  The day the accident occurred, while engaged in removing the sand, a coemployee in charge of one of the rumblers called for his assistance in opening a machine and taking therefrom its load

of castings. While advancing to reach the place where his assistance was required, his clothing was caught by a cleat projecting from between the staves of a revolving rumbler, and he was thrown between that rumbler and the one next to it, and seriously injured. The projecting cleat was a small awning fixture, one of a mass that was undergoing the polishing process within the rumbler. It seems clear enough that at the point where the cleat protruded the space between the staves exceeded the ordinary or regulation width. Had the width been uniformly one quarter of an inch the cleat would have been securely confined within the rumbler. Since its partial escape was the alleged cause of the accident, the burden rested on the plaintiff to show that the cleat was where it was through the negligence of the defendant. How came it there? It must have been either because of a break in one of the staves at that point, or, because at that point the staves had been gradually worn away by the sand that had passed between them. The staves were of cast iron and it would seem almost incredible that the amount of sand that would pass through a crevice of a quarter of an inch over such a surface could by mere attrition appreciably reduce it. On the other hand it is matter of common observation that cast iron will under certain uses and tests crack and break into parts. We are not stating the case too strongly when we say that the average person, with nothing before him but the facts we have stated, and it not appearing that the rumbler showed any change whatever in any of its parts at any other point, would without hesitancy refer the increased aperture between the staves, to breakage rather than as the result of attrition. Had the plaintiff assigned breakage as the cause, since it might have been the accident of a moment and of which the defendant could not have been advised, his case as presented would have been totally insufficient. Instead, he referred the separation of the staves to gradual attrition which upon proper inspection of the machine would have been revealed. We now reach the question of the case.

Was the evidence offered sufficient to warrant a reasonable inference that the widened space resulted from a gradual wearing through attrition? If so, it was a case for the jury. We repeat here, because most appropriate in this connection, what was said by Mr. Justice STERRETT in Longenecker v. Penna. R. R. Co., 105 Pa. 328: "The preliminary question of law for the court undoubtedly is, not whether there is literally no evidence, or a mere scintilla, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established. If there is evidence from which the jury can properly find the question for the party on whom the burden of proof rests, it should be submitted; on the other hand, if the evidence is wholly insufficient to justify the jury in this finding, and the court would feel bound to set aside their verdict if they did so find, the testimony should be withdrawn from the consideration of the jury." The plaintiff himself was the only witness who testified to the occurrence. As he passed the machine he knew it was revolving; but knew nothing of the projecting cleat until it had fastened on his coat. In answer to the question, "What did you see when your jacket was caught?" he replied, "One of these cleats that protruded between the two staves, the worn out old staves." This question followed from the court, "I cannot hear you—the cleat protruded where?" To this he replied, "Between those two staves, your Honor. A space was between them—seemed to be worn out." Again by the court, "You said something about being worn?" A. "The staves were worn out. There was a space between them about a half foot long or a foot, between half a foot and a foot." We have given the whole of his testimony in chief so far as it relates to the cleat and the machine. He attempted the most feeble description of the rumbler and we are left wholly to conjecture with respect to the size of the cleat and the extent of its projection. He is silent as to any knowledge of this particular machine before the accident occurred, and yet he speaks of the staves as being

old and worn out. So far as appears he had never looked at the machine until the moment the accident occurred. Indeed, upon his cross-examination, he testified that in describing the conditions where the cleat projected, he spoke from a mere glance he gave when he was caught, a matter of a second of time, and the machine then revolving. He states not a single fact with respect to the machine which gives support to his statement that the machine was worn out in any of its parts. From a rapid glance, in a moment of excitement and peril to himself, he reached a conclusion which at best could be nothing more than a conjecture. In saying that the widened space between the staves at this particular point was the result of wear, he was expressing not a fact warranting an inference, but a mere opinion. We repeat that the extent of this increased space where the cleat protruded, an inch in width and eight inches in length, indicated rather that it resulted from a break and not from a general wearing away, since it is only reasonable to suppose that the attrition at that particular point would be neither more nor less than any other between the same staves. The evidence furnished nothing upon which a jury could have based a conclusion that the accident occurred in one way rather than another. Upon a review of the evidence we are of opinion that it was not sufficient to carry the case to the jury, and that the nonsuit was properly ordered.

Judgment affirmed.