[Civ. No. 30661. First Dist., Div. Three. Nov. 14, 1972.]

HARLEY KING et al., Plaintiffs, Cross-defendants and Respondents, v. JOHN L. STODDARD, as Administrator
With the Will Annexed, etc., et al., Defendants, Cross-complainants and Appellants.

**COUNSEL**

Angell, Adams & Holmes, Philip H. Angell and Andrew H. Field for Defendants, Cross-complainants and Appellants.

Campbell, Van Voorhis & Bybee and Don Campbell for Plaintiffs, Cross-defendants and Respondents.

**OPINION**

**BROWN (H. C.), J.**—This is an appeal from a judgment in the sum of $12,370 rendered in favor of respondents, Harley King and Stanford White, for accounting services performed for the Walnut Kernel, a newspaper. The action was brought against the executors of two deceased partners who owned the newspaper.

The question presented on this appeal is whether the continuation of the newspaper after the death of the partners was an act of winding up the partnership under Corporations Code section 15035 so as to render the estate of the partners liable for an accountant's bill incurred subsequent to the death of the partners.

The facts: Prior to 1962, the newspaper, Walnut Kernel, was operated as a general partnership in which Lyman E. Stoddard, Sr., and Alda S. Stoddard owned a 51 percent interest as community property, and their son, Lyman E. Stoddard, Jr., owned 49 percent. On January 3, 1963, Alda S. Stoddard died and her daughter, Nancy Gans, was appointed executrix. After the death of Alda S. Stoddard, no formal winding up of the partnership took place. On February 13, 1964, Lyman E. Stoddard, Sr., died, and his son, John L. Stoddard, was appointed executor.

The operation of the business continued after the death of Lyman E. Stoddard, Sr.; Lyman E. Stoddard, Jr., operated it as the sole surviving partner. John L. Stoddard, who was then acting on behalf of both estates, considered his duty was to obtain the winding up of partnership affairs as quickly as possible. He was not satisfied with the continuation of the business and when his brother, Lyman, Jr., did not wind up the business, John made some unsuccessful attempts to sell it himself. In 1965 he brought an action against his brother, Lyman, Jr., to force an accounting and liquidation of the assets of the partnership. The case was dismissed before trial upon agreement of the parties which became effective September 6, 1966. In the written agreement, the parties settled their accounts with each other. Lyman E. Stoddard, Jr., agreed to be responsible for all debts arising out of the business since February 13, 1964. The agreement was approved by the probate court. The business was in a weak financial condition after Lyman E. Stoddard, Sr.'s, death and was eventually discontinued.

For approximately 10 years prior to the death of Alda S. Stoddard, the respondents, King and White, and their predecessors had been accountants for the Walnut Kernel. They continued to do the accounting after the deaths of Alda and Lyman, Sr. The appellants were aware that respondents were continuing their work. One of the respondents, King, testified that he understood that respondents would be paid at such time as the estates were in a liquid condition allowing payment and that he would not have continued to render the services had he known that the estates would not be responsible.

John L. Stoddard and Nancy Gans, the executors, did not individually participate in the operation of the partnership business in any manner. The court concluded they were not individually liable.

The court found the estate of Alda S. Stoddard liable for the accounting services rendered by appellants during the period of time following her death—1963 to 1968. The court also found the estate of Lyman E. Stoddard, Sr., jointly liable with the estate of Alda S. Stoddard for the account-

ing services rendered by appellants following his death—1964 to 1968. The court disallowed any claim rendered prior to the deaths of Lyman E. Stoddard, Sr., or Alda S. Stoddard as no claims were filed in those estates as required by section 700 et seq. of the Probate Code. The estate's liability was predicated upon the court's finding that the services were rendered during the process of winding up the partnership operation of the Walnut Kernel newspaper. We have concluded that the trial court erred and that the continuation of the business was not a winding up of the affairs of the partnership.

The partnership was dissolved by operation of law upon the deaths of Alda and Lyman E. Stoddard, Sr. Corporations Code section 15029 provides that dissolution of a partnership is " . . . caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Death is one of the causes of dissolution. (Corp. Code, § 15031.) Dissolution, however, does not terminate the partnership which " . . . continues until the winding up of partnership affairs is completed." (Corp. Code, § 15030.) "In general a dissolution operates only with respect to future transactions; as to everything past the partnership continues until all pre-existing matters are terminated." (*Cotten* v. *Perishable Air Conditioners,* 18 Cal.2d 575, 577 [116 P.2d 603, 136 A.L.R. 1068]; see also *Yahr-Donen Corp.* v. *Crocker,* 80 Cal.App.2d 675, 678 [182 P.2d 209].) ■ Although the general rule is that a partner has no authority to bind his copartners to new obligations after dissolution (*Steinbach* v. *Smith,* 34 Cal.App. 223, 224 [167 P. 189]; see also *Glassell* v. *Prentiss,* 175 Cal.App.2d 599, 605 [346 P.2d 895]), section 15035 of the Corporations Code provides that "[a]fter dissolution a partner can bind the partnership . . . (a) By any act appropriate for winding up partnership affairs . . . ."

It is this latter provision upon which the court based its decision that the estates of the deceased partners were liable for the accounting services performed after dissolution. The court found that "LYMAN STODDARD, JR.'s continuation of the WALNUT KERNEL business was an appropriate act for winding up the partnership, since the assets of the business would have substantial value only if it was a going business. It was to the advantage of the partnership that the business be maintained as a going business."

Respondents, as accountants, had performed services both before and after the dissolution. The services, however, were a continuation of the accounting services pursuant to the ordinary course of the operation of the business. Respondent King testified that he was " . . . doing work for

the activity of the newspaper, the financial activity of the newspaper" and that he was doing the same type of work as he had always performed for the Walnut Kernel. The exhibits which support his bill for services indicate that he did not, or was not able to, break down his services into categories which would separate ordinary accounting services from those related to a winding up of the partnership. The court, however, found that the continuation of the business itself was an "act appropriate for winding up partnership affairs."

■ We disagree with this finding. It is probably true that there might have been advantages to the partnership to sell the business as a going business, but the indefinite continuation of the partnership business is contrary to the requirement for winding up of the affairs upon dissolution. In *Harvey* v. *Harvey,* 90 Cal.App.2d 549, 554 [203 P.2d 112], the court disapproved a finding that the business and assets of a partnership were of such character as to render its liquidation impracticable and inadvisable until a purchaser could be found. The court stated: "In effect it [the finding] authorizes the indefinite continuation of the partnership after the death of a partner, a procedure not in accordance with section 571 of the Probate Code. Respondents counter with the argument that the business is such that it cannot be wound up profitably, and the estate given its share. But this argument overlooks the distinction between winding up a business and winding up the partnership interest in that business."

There are few cases which illustrate acts approved as "appropriate for winding up partnership affairs" under either the California Corporations Code or the identical section 35 of the Uniform Partnership Act. (See *Stump* v. *Tipps,* 120 Cal.App.2d 418 [261 P.2d 315] [assignment of partnership property to repay partnership debt]; *Cooley* v. *Miller & Lux,* 168 Cal. 120 [142 P. 83] [disposition of partnership property]; *Leh* v. *General Petroleum Corporation* (S.D.Cal. 1958) 165 F.Supp. 933 [maintenance of action for damages on behalf of the partnership]; *In re Heller's Estate,* 319 Pa. 135 [178 A. 681] [execution of renewal notes after death of partner].)

Even if we assume that a situation might exist where continuation of the business for a period would be appropriate to winding up the partnership interest, such a situation did not exist here. The record reflects the fact that the surviving partner was not taking action to wind up the partnership as was his duty under Probate Code section 571, nor did the estates consent in any way to a delay. Rather, their insistence on winding up took the form of an effort to sell the business and a suit to require an accounting. There is nothing in the record upon which to base the argument made by respondents that appellants consented to their continued

employment. The fact that they did not object is of no relevance. They had no right to direct and did not participate in the operation of the business. Therefore, the determination that the acts of the accountants were rendered during a winding up process is not based upon substantial evidence.

Appellants also argue that the trial court erred in failing to consider the allegations of their cross-complaint. This argument may not be considered by us as appellants failed to file a notice of appeal from the judgment in the cross-complaint.

■ We conclude that the services of respondents were rendered after the dissolution resulting from the deaths of the partners, Lyman, Sr., and Alda Stoddard, and do not constitute services during the "winding up" processes of the partnership within the meaning of section 15031 of the Corporations Code. The claim for those services, therefore, are not chargeable to the partnership.

The judgment is reversed.

Draper, P. J., and Caldecott, J., concurred.

A petition for a rehearing was denied December 14, 1972.