[Civ. No. 42679. First Dist., Div. One. Apr. 6, 1979.]

NEW YORK HIGHER EDUCATION ASSISTANCE
CORPORATION, Plaintiff and Appellant, v.
DANIEL MARK SIEGEL, Defendant and Respondent.

**COUNSEL**

Thomas D. Oakley, Jr., for Plaintiff and Appellant.

Siegel, Taub, Siegel & Friedman, Edward Taub and Michael Friedman for Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—Plaintiff New York Higher Education Assistance Corporation appeals from an order of the superior court vacating a judgment to enforce a "sister state judgment," which had previously been entered by the court in accordance with Code of Civil Procedure sections 1710.10-1710.65.

The record before the superior court at the time of entry of the criticized order disclosed the following.

Plaintiff was and is a publicly funded corporation which guarantees unsecured loans made to students by private lending agencies of the State of New York. In 1963 and 1964, defendant Siegel borrowed $1,800 from a New York savings and loan association, the repayment of which was so guaranteed by plaintiff. Siegel thereafter completed his education and is now a practicing attorney in Oakland, California. The loan going unpaid, plaintiff fulfilled the guarantee to its maker, and took an assignment of the obligation which was evidenced by a promissory note. Thereafter plaintiff commenced a New York action against Siegel for the amount owed by him on the note. After proper service of process upon him, Siegel appeared in the action by his verified answer, alleging (1) the obligation to be "void because at the time said alleged obligation arose defendant was a minor," and (2) that any suit thereon "is barred by the statute of limitations." Thereafter plaintiff, in the New York action, filed a notice of motion for summary judgment. An affidavit of service recited that the affiant had timely served the notice of motion on Siegel "by mailing a true copy of the notice of motion for summary judgment dated March 20, 1975 and of the affidavit of Willard S. Gates, verified March 19, 1975, upon which it is based, to the said Daniel Mark Siegel, by mailing a true copy thereof in a post-paid envelope, addressed to Daniel Mark Siegel at 2839 Forest Avenue, Berkeley, California, 94705." (The mailing was correctly addressed.) Siegel made no response to, or appearance on, the motion, and on May 16, 1975, summary judgment for the amount due on the promissory note was entered against him. Five days later, May 21, 1975, Siegel received notice that the summary judgment had been entered. The summary judgment thereafter became final.

On December 10, 1975, plaintiff, pursuant to Code of Civil Procedure section 1710.15, applied to the Alameda County Superior Court for

"entry of" a judgment "based on [the New York summary] judgment," and such a judgment was thereupon entered. Siegel thereafter, as permitted by Code of Civil Procedure section 1710.40, timely moved in the superior court to vacate the superior court's judgment. His single stated ground was that the New York summary judgment "was obtained through extrinsic fraud." In support of his motion, and as relevant, Siegel declared under penalty of perjury:

"At no time after the filing of my answer did I receive any notice or communication of any kind from the plaintiffs or the court in New York in regard to any hearing, motion, or other proceeding in regard to this case. If, in fact, a motion, hearing, or other proceeding did take place, I had no knowledge of it and thus was unable to appear for it, either personally or through counsel. Had I been aware of such a proceeding, I would have appeared therein to contest any action taken by the plaintiffs."

"I was never informed that such a hearing was taking place, and I still do not know the grounds upon which the summary judgment was entered.

"At all times from January 1975 through May 21, 1975, I resided at 2839 Forest Avenue, Berkeley, California and frequently received mail at that address. On no occasion did it ever come to my attention that mail sent to me at that address was mislaid or lost in any way."

". . . At the time I signed the papers for this loan, I asked the loan officer at Nassau Savings and Loan why I had to sign these papers, and why my parents had to sign the papers. The loan officer informed me that I was required to sign the papers to acknowledge that I was receiving the money, and that I had a moral obligation to repay the money. I was never informed that I had a legal obligation, i.e., that I had signed a contract legally binding me to repay the loan.

". . . Subsequently, I had occasion to speak with the loan officer at Nassau Savings and Loan regarding the 'loan.' I was never informed that the 'loan' was a legal obligation. It was always my understanding that the 'loan' was a moral obligation."

The promissory note signed by Siegel contained a prominently positioned recital: "By reason of the provisions of Article 14 of the Education Law of New York, *I understand that I am legally obligated to*

*pay this note even though I may be under twenty-one (21) years of age."* (Italics added.)

It is significant that Siegel made no evidentiary showing in the superior court that he had a meritorious defense to the New York action.

Following several courtroom hearings and other proceedings, the details of which we find irrelevant to our discussion, the superior court made its order setting aside the judgment "based on [the New York summary] Judgment . . . ." It is that order of the superior court from which the instant appeal was taken.

■ The record conclusively establishes that the New York court had jurisdiction over the subject of the action there filed, and also jurisdiction over the parties, for both of them had appeared therein. Its judgment was therefore entitled to "full faith and credit" under article IV, section 1, of the federal Constitution. (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 20, p. 3264.) It was to be given the same effect as though it had been a final judgment rendered by a court of this state. (*Id.,* §§ 16, 21, pp. 3260, 3265.) California "must, regardless of policy objections, *recognize the judgment of another state court as res judicata*; and this is so even though the *action or proceeding* which resulted in the judgment could not have been brought under the law or policy of [this state's] forum, . . ." (*Id.,* § 19, pp. 3262-3263.)

California's Code of Civil Procedure section 1710.40 provides: "A judgment entered pursuant to this chapter may be vacated on any ground which would be a defense to an action in this state on the sister state judgment, . . ." It is critical to a defense, as here, of "extrinsic fraud"* in the obtaining of a judgment, that *the party allege facts establishing a meritorious defense to the action in which the judgment was entered.*

Mr. Witkin has tersely explained the apposite rule in this manner:

■ "A valid judgment will not be set aside merely because it was obtained by extrinsic fraud or mistake, in order to give the barren right to an adversary hearing. The plaintiff must *plead and prove* that he has a

---

*It is notable that although Siegel averred, "had I been aware of such a [New York] proceeding, I would have appeared therein to contest any action taken by the plaintiffs," after his admitted prompt notice of the summary judgment's entry he had taken no steps to set it aside during the several months preceding commencement of the California proceeding.

meritorious case, i.e., a good claim or defense which, if asserted in a new trial, would be likely to result in a judgment favorable to him." (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 192, p. 3763.)

And the rule will apply even where it is contended, as does Siegel, that necessary process was not served or was defective. *Bennett* v. *Hibernia Bank,* 47 Cal.2d 540, 554 [305 P.2d 20], states: "Ordinarily equity will not interfere with a judgment on the ground of extrinsic fraud or mistake unless the one whose interests were infringed can present a meritorious case; the plaintiff must plead and prove facts from which it appears, at least prima facie, that if the judgment were set aside and the proceedings were reopened, a different result would probably follow. . . . *This rule has been applied in a number of cases involving proceedings in equity to set aside a judgment upon the ground that summons had not been served or that service was in some manner defective.*" (Italics added.)

█ It follows that the California superior court erred in setting aside the subject judgment.

No merit is seen in Siegel's unsupported argument "that in order to vacate a judgment based on summary judgment all he need show is that he could prevail on that motion, thereby forcing a trial on the merits." The rule's rationale would be equally applicable to such a context, for as said by Mr. Witkin, Siegel had no "barren right to an adversary hearing" without a showing of probable eventual success on the merits.

It has become unnecessary to consider other contentions and points raised by the parties.

The order vacating the judgment based on plaintiff's New York summary judgment is reversed. The superior court will enter judgment in favor of plaintiff according to Code of Civil Procedure sections 1710.10-1710.65.

Racanelli, P. J., and Newsom, J., concurred.