CHELSEA NATIONAL BANK, Respondent, v LINCOLN PLAZA TOWERS ASSOCIATES, Appellant.

First Department, April 21, 1983

**APPEARANCES OF COUNSEL**

*Stanley Alter, P. C.* for respondent.

*Edward A. Friedman* of counsel (*Stein, Zauderer, Ellenhorn, Friedman & Kaplan,* attorneys), for appellant.

**OPINION OF THE COURT**

FEIN, J.

Plaintiff sues to recover on a defaulted loan of $100,000 to Lincoln Plaza, Inc. (LPI) by proceeding on a continuing guarantee made by defendant Lincoln Plaza Towers Associates (Associates), a limited partnership, one of whose two general partners was Marvin Greenfield, president of LPI. The other general partner was LPT Corporation (LPT).

Greenfield was utilizing LPI to develop property the corporation leased on West 62nd Street in Manhattan. Defendant Associates was subsequently formed in 1971 for the purpose of providing supplemental financing for the project, and taking over ownership after completion. In November, 1973 LPI borrowed $300,000 from plaintiff, in

the form of a construction loan supported by three continuing guarantees. All three were executed by Greenfield, one in his own name, one in the name of Greenfield Organizations, Ltd. (GOL) by Greenfield as president, and a third in the name of defendant Associates executed by Greenfield as general partner. This loan was repaid at a take-out mortgage closing in August, 1974. At that time plaintiff issued a new $100,000 loan to LPI, in connection with which Greenfield executed a new personal guarantee, but not on behalf of GOL or defendant. When LPI defaulted on this loan, plaintiff sued LPI and the three guarantors of the 1973 loan, and moved for summary judgment in lieu of complaint (CPLR 3213). Greenfield had by this time gone into bankruptcy. LPI, Greenfield and GOL all defaulted, leaving Associates as the only viable defendant. After summary judgment was denied, a complaint was served, alleging liability grounded on the 1973 continuing guarantee and a theory of unjust enrichment. The latter cause of action was dismissed at the close of trial.

Among the questions raised at trial were whether Greenfield had actual or apparent authority to bind defendant Associates as a guarantor so as to cover LPI's 1974 loan from plaintiff. Associates' limited partnership agreement contained a provision that all action by the general partners (Greenfield and LPT) must be by unanimous consent. However, if the general partners were unable to agree on a matter requiring such unanimity, Greenfield's position would prevail. It is conceded that LPT, the other general partner, was not consulted when Greenfield executed the guarantee on behalf of defendant Associates. Defendant urges that the partnership agreement required Greenfield to make the effort to secure the consent of LPT before acting on behalf of the partnership. Although this might have been fruitless in light of Greenfield's power under the agreement to overrule his fellow general partner, it is indicative of lack of actual authority. Moreover, other aspects of the partnership agreement precluded Greenfield from binding the partnership as guarantor of the loan.

The enumerated powers of the general partners, as set forth in paragraph 6.1 of the agreement, included the power:

"(a) to borrow money from lending institutions and others for partnership purposes and in that connection to pledge, mortgage or otherwise encumber or grant security interests in any of the assets of the partnership * * *

"(d) to enter into agreements and execute instruments in the name of the partnership relating to such matters and on such terms as they may determine advisable".

This open-ended enumeration of powers embodies the only provisions closely related to the subject financial transaction. When analyzed in light of the stated purpose of the partnership (to acquire, improve and operate leasehold realty), none of the enumerated powers of the general partners confers actual authority to set the partnership up as a guarantor on a loan personally guaranteed by the signing general partner. Moreover, under the partnership agreement Greenfield committed himself to be personally responsible for construction costs exceeding $7,050,000. This would be meaningless if the agreement were read to allow Greenfield, as general partner, to bind the limited partnership to guarantee his own personal obligations. The trial court was thus correct in concluding that Greenfield had neither actual nor apparent authority to bind defendant on Greenfield's personal guarantee of the loan. Nor can any inference to that effect be drawn from the guarantee itself. In guaranteeing the 1973 loan, Greenfield signed as general partner of defendant. The 1974 loan to LPI was guaranteed by Greenfield solely in his individual capacity. Even if Greenfield had signed the 1974 guarantee on behalf of the partnership, the burden would still be on plaintiff to show that Greenfield had the actual authority to bind the partnership in this respect (*First Nat. Bank of Ann Arbor, Mich. v Farson,* 226 NY 218). As that case holds, the authority of a partner to guarantee, in the name of the partnership, obligations of third parties is not usual, and must be found in the partnership agreement or shown to be inherent in the partnership business. Neither was shown here.

Notwithstanding this lack of authority, the jury was permitted to find that an attorney for defendant had been aware of the guarantee, and thus ratified it on behalf of defendant at the mortgage closing when the 1974 loan was granted. The attorney categorically denied knowledge of the existence of the guarantee until the present action was commenced. However, plaintiff's witness, a bank officer who handled the loan to LPI and the guarantees signed by Greenfield, initially testified that he specifically recalled showing the guarantee to defendant's attorney, but later recanted and denied such specific recollection. This was the only evidence of knowledge, on the part of defendant's attorney at the closing, of the existence of a guarantee purporting to bind defendant. However, despite the jury's apparent finding that the attorney had such knowledge of the existence of a purported guarantee binding defendant, this does not constitute ratification of an unauthorized act. The attorney's appearance as an agent of defendant at the mortgage closing could not be construed as ratification of the previously executed guarantee. Ratification must proceed from the premise that Greenfield had initially had apparent authority to bind the partnership on the 1974 guarantee, which has not been shown. There is no showing whatsoever that the attorney was authorized to approve or ratify the existing guarantee.

The existence of apparent authority depends on proof that the third party relied upon conduct of the principal which clothed the agent with the appearance of authority (*Ford v Unity Hosp.*, 32 NY2d 464, 472-473). As that case holds, the apparent authority of a principal to act on behalf of his partnership cannot be established by the acts of an agent. Thus neither the actions of Greenfield nor those of the attorney could bind defendant on the guarantee. It was the obligation of plaintiff to make some effort to discover the actual scope of Greenfield's authority (*Ford v Unity Hosp., supra*). For all that appears, it made no such effort. It neither examined the limited partnership agreement nor consulted with counsel as to its meaning or significance. It merely collected signatures from one individual purporting to act for several principals to guarantee his own obligations. Moreover, there was no proof that the limited part-

nership received or accepted the benefit of the loan, or that it was applied to the limited partnership. There was no showing upon personal knowledge of the use of the loan proceeds. The proof was insufficient as a matter of law to establish that the guarantee was binding on defendant.

The motion to dismiss the complaint or for a directed verdict should have been granted.

The judgment, Supreme Court, New York County (BLANGIARDO, J.), entered December 30, 1981 after jury trial, granting plaintiff recovery of $100,000 plus interest on its first cause of action and dismissing the second cause of action, should be reversed on the law so far as appealed from and the complaint should be dismissed with costs.

KUPFERMAN, J. P., CARRO, SILVERMAN and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on December 30, 1981, unanimously reversed, on the law, and the complaint dismissed. Appellant shall recover of respondent $75 costs and disbursements of this appeal.