[No. E008907. Fourth Dist., Div. Two. Jan. 5, 1993.]

TSAKOS SHIPPING AND TRADING, S.A., Plaintiff and Respondent, v. JUNIPER GARDEN TOWN HOMES, LTD., Defendant and Appellant.

80

## COUNSEL

Arnold B. Abrams for Defendant and Appellant.

Meadows, Smith, Lenker, Sterling & Davis and Joseph R. McFaul for Plaintiff and Respondent.

## OPINION

**DABNEY, Acting P. J.**—Defendant Juniper Garden Town Homes, Ltd. (Juniper), appeals from the denial of its motion to vacate a sister state money judgment entered in favor of plaintiff Tsakos Shipping and Trading, S.A. (Tsakos). Juniper contends: (1) the underlying judgment was void because: (a) process was never properly served on Juniper, (b) Juniper's former general partner had no actual or apparent authority to bind the partnership in the matter that was the basis of Tsakos's lawsuit, and (c) the judgment was obtained by extrinsic fraud or mistake; (2) the trial court erred in finding that Juniper had been represented by counsel in the New York action; and (3) counsel who purported to represent Juniper in the New York action had a conflict of interest, and Juniper was therefore deprived of a fair trial. In addition, Juniper requests this court to take judicial notice of certain records of the New York court.

Tsakos responds that Juniper's motion to vacate the entry of sister state judgment was untimely, and in any event, the New York judgment was valid. Tsakos also objects to this court's taking judicial notice of factual matters never presented to the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1979, Victor Hsia, Chris Hong, Arpad Chabafy, and Juniper Investments, Ltd., created Juniper, a limited partnership. Limited partnerships were then governed by California's Uniform Limited Partnership Act (ULPA), Corporations Code section 15501 et seq.[2] The purpose of the partnership was to develop condominium units on vacant land Juniper owned in Fontana (the Fontana property).[3] In the partnership agreement, filed in Orange and San Bernardino Counties, Hsia and Hong were named as general partners, and

---

[1]Counsel for Juniper made at best a perfunctory effort to provide record references in its statement of facts, thus imposing an unnecessary burden on this court. Counsel is admonished that "The statement of any matter in the record shall be supported by appropriate reference to the record." (Cal. Rules of Court, rule 15(a).) Although we may strike a brief that fails to comply with the rules of court (Cal. Rules of Court, rule 18), we conclude that no useful purpose would be served by doing so in this case.

[2]All further statutory references are to the Corporations Code unless otherwise indicated.

[3]The partnership agreement identified the purpose of the partnership as being "to acquire, hold, and improve a townhouse condominium project for resale purposes on that portion of the land described in Exhibit 'A' attached hereto and made a part hereof. The Partnership will

Chabafy was named as the managing general partner. Juniper Investments, Ltd., was designated an investor and limited partner. The partnership agreement authorized each general partner to act on behalf of the partnership, its business, and its property. As the managing general partner, Chabafy's decision was to control in the event of a disagreement between general partners.

The partnership agreement provided that the partnership would dissolve on the fifth anniversary of its recordation or on the sale of the property, whichever occurred first. The fifth anniversary of the recordation of the agreement was December 6, 1984.

Development of the Fontana property became unfeasible, and Juniper apparently abandoned its business venture and dissolved by agreement of all partners in 1983. However, title to the Fontana property continued to be held in Juniper's name, and no steps were then taken to wind up partnership affairs or terminate the partnership. In 1985, Juniper brought suit against Chabafy to require him to transfer the partnership books and records to Hsia, Hong, or Juniper Investments, Ltd. In that action in the Orange County Superior Court, Juniper was represented by Arnold B. Abrams and Chabafy was represented by Lawrence Allen. A settlement was reached on September 3, 1986, under which Chabafy agreed to turn over Juniper's books and records to Juniper Investments, Ltd., Hsia and Hong. On May 27, 1986, Chabafy had attempted to file a statement of withdrawal from partnership with the San Bernardino County Clerk. The document was rejected for filing on the ground the county clerk's office had no record of Juniper's fictitious business name. The Fontana property was apparently awarded to Juniper Investments, Ltd., but title remained in Juniper's name.

Meanwhile, in July 1984, the California Revised Limited Partnership Act (CRLPA), section 15611 et seq., was enacted. Under the CRLPA, existing limited partnerships continued to be governed by the ULPA unless they elected to be governed by the CRLPA and filed a certificate with the Secretary of State. (§§ 15710-15712.) Juniper did not file such a certificate.

On April 11, 1985, Chabafy borrowed $35,000 from Tsakos. Representing that he was the managing partner of Juniper, Chabafy signed an indemnity provision purporting to bind Juniper to guarantee his loan (the guaranty agreement). Chabafy failed to repay the loan, and Tsakos filed a complaint in the New York Supreme Court on July 8, 1986. Tsakos named Chabafy

also engage in any and all general business activities related to or incidental to these purposes."

and Juniper, among others, as defendants. Tsakos served the complaint by mail on Juniper in care of the Chabafy Company, Inc. Chabafy engaged attorney Leslie S. Kohn, who answered, counterclaimed, and cross-claimed in the New York action, purporting to act on behalf of both Chabafy and Juniper. Neither Hsia nor Hong, Juniper's other general partners, was then aware of Tsakos's loan to Chabafy or of the New York action.

Judgment was rendered in favor of Tsakos against all defendants in the New York action in August 1989 for the sum of $35,000 plus interest and attorney fees. In January 1990, Tsakos filed a notice of entry of the New York judgment in the San Bernardino Superior Court.

Hsia and Hong, Juniper's other general partners, learned of the notice of entry of sister state judgment when a buyer for the Fontana property located the notice while doing a title search. Juniper was listed as the seller of the Fontana property in the original escrow documents. On February 12, 1990, Juniper recorded a grant deed transferring the Fontana property to Juniper Investments, Ltd.

On April 26, 1990, Juniper filed a motion to vacate the sister state judgment under Code of Civil Procedure section 1710.40. The basis of the motion was that Juniper had never been served in the New York action.

The matter was set for hearing on May 21, 1990. Tsakos contended it had served notice of entry of sister state judgment on March 12, 1990, and the motion was therefore untimely. The court requested supplemental briefing on that issue and on whether Juniper had been properly served in the New York action. The court continued the matter until June 28, 1990.

On June 28, 1990, the court took the matter off calendar because Juniper had mistakenly filed a cancellation certificate with the Secretary of State under section 15623. The court concluded that Juniper's action deprived it of status to bring the motion. However, the court stated that Juniper's motion to vacate could be recalendared if Juniper established its standing. Juniper obtained a writ of mandate to require the Secretary of State to reinstate its partnership status. Juniper then refiled the motion to be heard on November 13, 1990. The court ruled that Juniper had been represented in the New York action by attorney Kohn and through him had made a general appearance in that action. The court therefore denied the motion to vacate.

Additional facts are set forth in the discussion.

DISCUSSION

I

*Timeliness of Motion*

■ Tsakos contends the motion to vacate the entry of the sister state judgment was properly denied as untimely. Code of Civil Procedure section 1710.40,[4] subdivision (b) requires such a motion to be brought within 30 days of service of notice of entry of judgment.

A. *Effect of Juniper's Actual Knowledge.*

Tsakos argues that Juniper learned of the entry of judgment in January 1990, but did not file its motion until April 1990. Although Hsia and Hong had learned of the entry of judgment in January 1990, Tsakos had then not yet served notice on Juniper. Under Code of Civil Procedure section 1710.40, subdivision (b), actual knowledge does not commence the running of the 30-day period. Rather, the statute explicitly states that the 30-day period for bringing the motion commences with *service* of the notice of the sister state judgment. Contrary to Tsakos's contention, Code of Civil Procedure section 1710.40 did not require Juniper to file its motion to vacate within 30 days of learning of the judgment.

B. *Effect of Defective Service.*

■ On April 21, 1990, Juniper filed its motion to vacate entry of the sister state judgment. Tsakos challenged the motion as untimely on the ground Tsakos had, on March 12, 1990, served notice of entry of the judgment.

Tsakos had attempted service on that date by leaving a copy of the notice with a receptionist at the office of Juniper's counsel. Such service was not proper for several reasons. First, it was not personal service under Code of Civil Procedure section 415.10, because the receptionist was not the person to be served on behalf of the partnership.

---

[4] "(a) A judgment entered pursuant to this chapter may be vacated on any ground which would be a defense to an action in this state on the sister state judgment, . . .

"(b) Not later than 30 days after service of notice of entry of judgment pursuant to Section 1710.30, proof of which has been made in the manner provided by Article 5 (commencing with Section 417.10) of Chapter 4 of Title 5 of Part 2, the judgment debtor, on written notice to the judgment creditor, may make a motion to vacate the judgment under this section.

"(c) Upon the hearing of the motion to vacate the judgment under this section, the judgment may be vacated upon any ground provided in subdivision (a) and another and different judgment entered, including, but not limited to, another and different judgment for the judgment creditor if the decision of the court is that the judgment creditor is entitled to such different judgment. . . ." (Code Civ. Proc., § 1710.40.)

Second, Tsakos's assertion that service was complete under Code of Civil Procedure section 1011, subdivision (a) is not well taken. Code of Civil Procedure section 1710.30, subdivision (a) clearly states that service of a notice of entry of sister state judgment must be accomplished by the methods of service that apply to summons and complaint. Case law has long established that Code of Civil Procedure section 1011 does not apply to service of summons and complaint (*Hunstock* v. *Estate Development Corp.* (1943) 22 Cal.2d 205 [138 P.2d 1, 148 A.L.R. 968]); rather, section 1011 applies to service of notice and papers.

Third, although service may be completed by leaving a copy of the summons and complaint at the business office of the person to be served, *a copy of the summons must thereafter be mailed to the person to be served.* (Code Civ. Proc., § 415.20, subd. (a).) Service is then complete on the 10th day after the mailing. (*Ibid.*) However, Tsakos failed to mail a copy of the notice and therefore did not serve Juniper on March 12, 1990.

C. *Effect of Juniper's "Admission."*

■ Tsakos next argues unpersuasively that proof of service was established by Juniper's written admission. Code of Civil Procedure section 417.10, subdivision (d) states that the written admission of a party is one of the methods by which *proof of service* of a summons may be made. Tsakos contends that Juniper's pleadings and the declarations of its general partners established that Juniper received notice of entry of the sister state judgment in February 1990.

The declarations and pleadings do indicate that Juniper had actual knowledge of the entry of the sister state judgment, but they do not constitute an admission that the notice was *served* on them. As we stated above, actual knowledge is insufficient to commence the running of the 30-day period for filing the motion. The statute explicitly requires service of notice.

D. *Effect of Reinstatement of Juniper's Standing to Appear.*

The motion to vacate was set for hearing on May 21, 1990. At the hearing, the court ordered the parties to prepare supplemental memoranda addressing the issue of service and continued the motion to June 28, 1990. Tsakos apparently served notice of the entry of sister state judgment on Juniper's counsel at a deposition on June 6, 1990.

In a minute order dated June 29, 1990, the court declared that Juniper did not have standing to bring the motion. Section 15712, subdivision (a)(4)

specifies that a limited partnership "May not maintain any action, suit, or proceeding in any court of this state until it has filed a certificate as required by paragraph (2)." Hsia and Hong had signed certificates of dissolution and of cancellation of limited partnership. On advice of counsel, the certificate of cancellation had been filed with the Secretary of State in February 1990.

Juniper's counsel requested an opportunity to reinstate Juniper's capacity to appear in court. The court responded, "I guess one of the things I could do is just take your motion off calendar for the reason that you don't have any capacity to sue. If you later acquire capacity, then we can cross that bridge when we come to it."

On September 27, 1990, Juniper filed a petition for writ of mandate to compel the Secretary of State to cancel Juniper's certificate of cancellation and to reinstate Juniper's limited partnership status. The court granted the writ, and on October 5, 1990, Juniper's limited partnership status was reinstated.

Juniper refiled its motion to vacate on October 22, 1990, and it was heard and denied on November 13, 1990. ▆ Tsakos contends that Juniper's lack of standing did not toll the 30-day period specified in Code of Civil Procedure section 1710.40, subdivision (b), and the motion was therefore properly denied as untimely.

In the analogous situation of a corporation whose powers have been suspended during litigation, the Supreme Court has held that the revivor of corporate powers validates the corporation's earlier acts and permits it to proceed with the action. (*Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 371-374 [105 Cal.Rptr. 29, 503 P.2d 285].) Moreover, a corporation is entitled to a reasonable continuance to take necessary steps to obtain reinstatement. (*Schwartz* v. *Magyar House, Inc.* (1959) 168 Cal.App.2d 182, 189 [335 P.2d 487].) Here, significantly, the trial court did not deny or dismiss Juniper's motion at the June 18 hearing; rather, the court explicitly stated it was taking the motion off calendar and indicated the motion could be heard once reinstatement was accomplished. We conclude the motion was timely.

## II

*Request for Judicial Notice*

▆ Juniper moved this court for leave to produce additional evidence, to augment the record on appeal, and to take judicial notice of the court file in

the New York action. Tsakos opposed the request on the ground that the evidence was merely cumulative; it conflicted with substantial evidence in the record on which the trial court based its decision in this action; and Juniper failed to exercise diligence to obtain documents known to exist. This court reserved its ruling on the motion for consideration with the appeal.

A motion for leave to produce additional evidence on appeal is governed by California Constitution, article VI, section 11, which provides, "The Legislature may permit appellate courts to take evidence and make findings of fact when jury trial is waived or not a matter of right." To implement this section, the Legislature has enacted Code of Civil Procedure section 909.[5] (See also Cal. Rules of Court, rules 23(b), 41.) In addition, Evidence Code section 452, subdivision (d) authorizes a court to take judicial notice of court records of sister state courts.

### Diligence

The court's power to accept new evidence on appeal should not be exercised when the appellant has failed to show good cause for the unavailability of the evidence in the trial court. (*DeYoung* v. *Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 863, fn. 3 [206 Cal.Rptr. 28].)

Tsakos argues that Juniper learned of the New York action in January 1990, and its motion to vacate was not heard until November 1990. Tsakos contends Juniper therefore had ample time to obtain the necessary records from the New York action.

Juniper represented that it attempted to obtain the complaint and relevant documents from the New York action but was unable to do so because there was an error in the case number as it appeared on the counterjudgment in the New York action. The record reflects that the counterjudgment bears the case number 3755/88. Other documents in the record indicate that the correct

---

[5]"In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues." (Code Civ. Proc., § 909.)

case number was 3755/86. However, Tsakos points out that Juniper had the correct case number for the underlying New York action at least as early as May 22, 1990, when it attached a copy of a document bearing the correct number to points and authorities in support of its motion to vacate.

Juniper also represented that it requested the pertinent documents from opposing counsel, who failed to send the complete file. Juniper asserts it did not take further steps to obtain the documents because it believed it had received all of the documents from opposing counsel.

Juniper's assertions do not establish diligence on Juniper's part. First, as we have noted, Juniper had documents in its possession at least as early as May 22, 1990, showing the correct case number. Second, Juniper has failed to state specifically what documents it requested from opposing counsel, and Juniper does not contend that it sought such documents through any formal discovery proceeding. Even if the documents were sought through an informal request, Juniper has failed to establish that the request was specific enough to include the entire file in the New York action or that opposing counsel represented that he had provided all such documents when in fact he had not done so.

We conclude that no good cause has been shown for the failure to present the documentary evidence in the trial court. We therefore decline to take additional evidence on the matter. (*DeYoung* v. *Del Mar Thoroughbred Club*, *supra*, 159 Cal.App.3d at p. 863, fn. 3.)

### III

#### *Motion to Vacate*

Juniper advances several arguments for setting aside the sister state judgment. First, Juniper contends service was ineffective. Second, Juniper contends the judgment was obtained on the basis of extrinsic fraud because attorney Kohn, who purported to represent the partnership in the New York action, had a conflict of interest which requires the judgment to be set aside. Third, Juniper contends that Chabafy had no actual or ostensible authority to bind Juniper to guarantee Chabafy's loan.

A. *Standard of Review.*

■ Juniper moved under Code of Civil Procedure section 1710.40 to set aside the sister state judgment. As the moving party, Juniper had the burden to show by a preponderance of the evidence why it was entitled to relief. (*Tom Thumb Glove Co.* v. *Han* (1978) 78 Cal.App.3d 1, 5 [144 Cal.Rptr. 30].)

■ The ruling on a motion to set aside a judgment rests in the sound discretion of the trial court and will not be set aside on appeal unless a clear

abuse of discretion appears. (*Zirbes* v. *Stratton* (1986) 187 Cal.App.3d 1407, 1411 [232 Cal.Rptr. 653]; *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 352 [66 Cal.Rptr. 240].) On appeal of the trial court's ruling on a such motion, we view all factual matters most favorably to the prevailing party. (*Zirbes, supra*, 187 Cal.App.3d at p. 1412.)

B. *Validity of Service on Chabafy in New York Action.*

The evidence was undisputed that the summons and complaint in the New York action were served by mail on Juniper in care of Chabafy Company, Inc. Juniper contends that such service was insufficient to give notice to the partnership because: (1) Tsakos's action against Juniper was based on Chabafy's fraud, (2) Juniper had dissolved before service of the complaint, and (3) such service was inadequate under California law.

Ordinarily, a judgment may be entered against a partnership based on service upon one partner after dissolution but before the termination of the partnership.[6] (*Cotten* v. *Perishable Air Conditioners* (1941) 18 Cal.2d 575, 577 [116 P.2d 603, 136 A.L.R. 1068].) This is based on the general rule that "Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, . . ." (§ 15012.) This rule does not apply "in the case of a fraud on the partnership committed by or with the consent of that partner." (*Ibid.*)

However, a voluntary general appearance may waive defects in service. (*Promotus Enterprises, Inc.* v. *Jiminez* (1971) 21 Cal.App.3d 560, 563-564 [98 Cal.Rptr. 571].) Here, Attorney Kohn purported to appear for Juniper in the New York action, filed an answer on its behalf, and took part in the New York proceedings on its behalf. Even if service had been defective as to Juniper, if Kohn actually represented the partnership (an issue we consider in pt. III D. 1.), such representation waived any defects in service.

Moreover, even if we were to assume service was inadequate, defective service alone is not a sufficient basis to vacate entry of a sister state judgment. Rather, a party "'must *plead and prove* that he has a meritorious case, i.e., a good claim or defense which, if asserted in a new

---

[6]The concepts of dissolution and termination of a partnership are discussed *post* in part III C. 3.

trial, would be likely to result in a judgment favorable to him.' [Citation.] [¶] And the rule will apply even where it is contended, . . . that necessary process was not served or was defective." (*New York Higher Education Assistance Corp.* v. *Siegel* (1979) 91 Cal.App.3d 684, 688-689 [154 Cal.Rptr. 200].) The same standard applies to a motion to vacate a judgment on the basis of extrinsic fraud or mistake. (*Ibid.*; *Baske* v. *Burke* (1981) 125 Cal.App.3d 38, 46 [177 Cal.Rptr. 794].)

Thus, Juniper must show that a different result would likely follow if the New York judgment were set aside and a new trial held. We therefore turn to the merits of Juniper's attack on the New York judgment before considering whether extrinsic fraud or mistake should lead us to order vacation of the sister state judgment.

### C. Merits of Juniper's Defense to New York Action.

Tsakos's New York complaint was based on Juniper's purported guaranty of Chabafy's loan. Chabafy, representing himself to be a general partner of Juniper acting within his authority as such, executed the guaranty agreement on behalf of Juniper. Juniper's general partners had no knowledge of Chabafy's action and did not ratify it.

The court hearing Juniper's motion to vacate entry of sister state judgment found that Chabafy was acting as a general partner as late as September 3, 1986, when he executed a certificate of dissolution for Juniper. In that document, he identified himself as a general partner. The court ruled that Chabafy was therefore "still a general partner and entitled to act on behalf of the limited partnership" when he accepted service and engaged counsel on behalf of Juniper.

In making this ruling, the trial court was apparently misled by counsels' misstatements about the law concerning the dissolution of a partnership and its consequences. Both in the trial court and on appeal, Tsakos has exhibited a fundamental misunderstanding of the concept of dissolution of a partnership.[7] We therefore review general partnership principles to establish the proper context for the discussion which follows.

---

[7]Tsakos has consistently characterized as "fraudulent" the actions of Juniper's general partners in 1986, 1990 and 1991 to wind up partnership affairs, because the general partners executed various documents as general partners even though arguing that the partnership had dissolved. The ensuing discussion of partnership law makes clear that these two positions are not inconsistent, and certainly not fraudulent.

1. *Formation of a Limited Partnership Under the ULPA.*

Juniper was organized under the ULPA. When the events that gave rise to this litigation occurred, Juniper had not filed a certificate with the Secretary of State so as to be subject to the CRLPA. Thus, Juniper continued to be governed by the provisions of the ULPA. (§§ 15710-15712.)

A limited partnership could be formed under the ULPA by signing, acknowledging, and filing with the county recorder a certificate of limited partnership. (§ 15502.) Among other things, the certificate was required to state the term for which the partnership was to exist. (§ 15502, subd. (1)(a)(V).) One purpose for filing the certificate was to give notice to the public of the terms of the partnership agreement. (*Brown* v. *Panish* (1979) 99 Cal.App.3d 429, 431 [160 Cal.Rptr. 282].) Juniper filed the required certificates in both Orange and San Bernardino Counties.

2. *Rights and Duties of General Partners Under the ULPA.*

Under the ULPA, general partners of the limited partnership had "all the rights and powers and [were] subject to all the restrictions and liabilities of a partner in a partnership without limited partners," except that consent of other partners was required to take certain actions. (§ 15509.)

Under California partnership law, "(1) Every partner is an agent of the partnership *for the purpose of its business*, and the act of every partner, including the execution in the partnership name of any instrument, *for apparently carrying on in the usual way the business of the partnership* of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority. . . .

"(2) An act of a partner *which is not apparently for carrying on of the business of the partnership in the usual way* does not bind the partnership unless authorized by the other partners." (§ 15009, italics added; *Milazo* v. *Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1538 [274 Cal.Rptr. 632].)

3. *Dissolution of a Partnership.*

Throughout this action, Tsakos has persistently confused the dissolution of a partnership with its termination after the winding up of the partnership business. In fact, the two concepts, and their consequences, are very different.

"The dissolution of a partnership is the *change in the relation of the partners* caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." (§ 15029, italics added.) ■■■ On specified events, such as the death of a general partner, dissolution occurs by operation of law. (*King* v. *Stoddard* (1972) 28 Cal.App.3d 708, 711 [104 Cal.Rptr. 903].) A partnership for a fixed term dissolves when the term expires. (§ 15031, subd. (1)(a).) Partnerships may also dissolve by agreement of the partners before that time. (*Vogler* v. *Ingrao* (1954) 123 Cal.App.2d 341, 343 [266 Cal.Rptr. 826].)

A partnership does not *terminate* after dissolution, but continues until partnership affairs are completely wound up. (§ 15030.) However, dissolution terminates the authority of a partner to act for the partnership "[e]*xcept so far as may be necessary to wind up partnership affairs or to complete transactions begun but not then finished*, . . ." (§ 15033, italics added; *King* v. *Stoddard, supra*, 28 Cal.App.3d at p. 711.) To effect a dissolution, the partners need not contemporaneously divide their assets or arrange to do so. (*Fisher* v. *Fisher* (1948) 83 Cal.App.2d 357, 361 [188 P.2d 802].)

■■ A general partner can nonetheless bind the partnership after dissolution by acts that would have bound the partnership before the dissolution if: (1) *the other party to the transaction had "known of the partnership prior to dissolution"* (§ 15035, subd. (1)(b)(II), italics added); (2) the other party had no actual knowledge or notice of the dissolution; and (3) no notice of dissolution had been advertised (*ibid.*). (See *Credit Bureaus of Merced County* v. *Fuller* (1962) 199 Cal.App.2d 495, 498 [18 Cal.Rptr. 668].) For a former partner to bind the partnership after dissolution, the creditor must have known of the existence of the partnership before the dissolution. The burden to prove this prior knowledge is on the party seeking to hold the partnership liable. (*Vogler* v. *Ingrao, supra*, 123 Cal.App.2d at p. 344.)[8]

■■ Here, however, *as a matter of law*, the partnership had dissolved before Chabafy executed the guaranty agreement. As discussed above, a partnership dissolves by operation of law on the happening of specified events. The Juniper partnership dissolved, at the latest,[9] on the expiration of the term specified in the partnership agreement, i.e., December 6, 1984, even

---

[8]In supplemental briefing, Tsakos asserts *Vogler* stands for the proposition that the partnership has the burden of showing prior knowledge. Tsakos apparently misreads the *Vogler* opinion.

[9]Juniper contends that the partnership had dissolved on December 31, 1983, by agreement of the general partners. We need not address the issue, because in any event, the partnership dissolved on the expiration of the term specified in the partnership agreement. Thus, the partnership had dissolved before Chabafy executed the guaranty agreement on April 11, 1985.

though the parties took no steps at that time to wind up the partnership affairs or terminate the partnership.

### 4. *General Partner's Authority to Execute Guaranty.*

Even before dissolution, any act of a partner not apparently for carrying on the business of the partnership in the usual way does not bind the partnership unless the act is ratified by the other partners. (§ 15009, subd. (2); *Ellis* v. *Mihelis* (1963) 60 Cal.2d 206, 218 [32 Cal.Rptr. 415, 384 P.2d 7].) " 'The apparent scope of the partnership business depends primarily on the conduct of the partnership and its partners and what they cause third persons to believe about the authority of the partners. Ostensible agency or acts within the scope of the partnership business are presumed "where the business done by the supposed agent, so far as open to the observation of third parties, is consistent with the existence of an agency, and where, as to the transaction in question, the third party was justified in believing that an agency existed." [Citations.]' [Citation.]" (*Owens* v. *Palos Verdes Monaco* (1983) 142 Cal.App.3d 855, 865-866 [191 Cal.Rptr. 381].)

 Courts have consistently concluded that a general partner has no authority to bind the partnership upon a contract of guaranty. " 'The normal partnership is organized to carry on a business for its members, and not to assist other persons by becoming surety for them, or answerable for their debts.' [Citation.]" (*Mayr* v. *Goldschmidt* (1923) 63 Cal.App. 381, 385 [218 P. 621].) Another court announced the general rule that a partner has no authority to execute contracts of guaranty on behalf of the partnership " 'without authority specially given him for the purpose, or implied from the common course of the business of the firm, or from the previous course of dealing between the parties, unless the act of such partner is afterward ratified by his copartners.' [Citation.]" (*Rodabaugh* v. *Kauffman* (1921) 53 Cal.App. 676, 680 [200 P. 747].)[10]

 Consistent with the holding of *Vogler*, *Mayr*, and *Rodabaugh*, the burden was on Tsakos to demonstrate that Juniper had specifically given

---

[10]New York law leads to the same conclusion. In *Chelsea Nat. Bank* v. *Lincoln Plaza Towers* (1983) 93 A.D.2d 216 [461 N.Y.S.2d 328], the court held that a managing general partner of a limited partnership had neither actual nor apparent authority to bind the limited partnership on the general partner's personal guaranty of a loan. This was so even though the partnership agreement (like the Juniper partnership agreement) gave the general partner the power " 'to borrow money from lending institutions and others for partnership purposes and in that connection to pledge, mortgage or otherwise encumber or grant security interests in any of the assets of the partnership;' " and " 'to enter into agreements and execute instruments in the name of the partnership relating to such matters and on such terms as they may determine advisable.' " (*Id.,* at p. 330.) The court explained, "[T]he burden would . . . be on plaintiff to show that [the general partner] had the actual authority to bind the partnership in this respect [citation]. . . . [T]he authority of a partner to guarantee, in the name of the

Chabafy the authority to execute contracts of guaranty on behalf of the partnership, that such authority could be implied from prior dealings between Tsakos and Juniper, or that Juniper later ratified Chabafy's action. It did not do so. We conclude that Juniper has met its burden of pleading and proving it had a meritorious defense to the New York action.[11] (*New York Higher Education Assistance Corp.* v. *Siegel, supra,* 91 Cal.App.3d at pp. 688-689.) We therefore return to the issue of whether a basis exists for vacating notice of entry of that judgment.

### D. *Extrinsic Fraud or Mistake in Obtaining Judgment.*

A sister state judgment may be set aside "on any ground which would be a defense to an action in this state on the sister state judgment." (Code Civ. Proc., § 1710.40, subd. (a).) Such grounds include extrinsic fraud or mistake in obtaining the judgment. The court may set aside the judgment on the ground of mistake, inadvertence, or excusable neglect because a conflict in representation deprived a party of a fair trial. (See Code Civ. Proc., § 473; *Gregory* v. *Gregory* (1949) 92 Cal.App.2d 343, 345, 348-349 [206 P.2d 1122]; *Raynum* v. *Wallace* (1938) 28 Cal.App.2d 136, 137-138 [82 P.2d 74]. See also *Promotus Enterprises, Inc.* v. *Jiminez, supra,* 21 Cal.App.3d at p. 562.)

Juniper argues that the judgment should be vacated because Kohn was not authorized to appear on its behalf in the New York action, he had a clear conflict of interest in representing both Chabafy and the partnership in that action, and his purporting to represent both Chabafy and Juniper deprived Juniper of a fair trial.

### *Kohn's Authority to Appear on Behalf of Juniper in New York Action*

Kohn purported to appear on behalf of Juniper in the New York action. He filed an answer to Tsakos's complaint in Juniper's name and apparently

---

partnership, obligations of third parties is not usual, and must be found in the partnership agreement or shown to be inherent in the partnership business." (*Ibid.*) The court further held that the burden is on the person seeking to enforce such a guarantee to discover the actual scope of the general partner's authority, by examining the limited partnership agreement and consulting with counsel on its meaning. (*Id.,* at p. 331.)

[11] In additional briefing, Tsakos contends that the record does not show that the proceeds of the loan to Chabafy were used for his personal benefit rather than for the benefit of the partnership. The documents in the record belie this argument. The joint venture agreement names Chabafy, not Juniper, as a party to the joint venture with Tsakos. Juniper is mentioned only to the extent it incurred an obligation to indemnify Tsakos "from any costs, expenses and damages suffered by Tsakos by virtue of Tsakos's payment to First Guaranty in the amount of $35,000.00 in satisfaction of the obligations of [another individual] and Chabafy to make such payments to First Guaranty pursuant to this agreement." Tsakos's position is meritless.

appeared for Juniper throughout the proceedings. We also note that California attorney Lawrence Allen was apparently associated as counsel for both Chabafy and Juniper in the New York action until October 31, 1988, when he executed a notice of disassociation. Allen also represented Chabafy in Juniper's 1986 California action against him for dissolution and accounting.

After dissolution, a general partner has authority to conduct litigation on behalf of the partnership concerning partnership business, and to employ counsel on its behalf, at least as to matters arising before the dissolution. (§ 15033; *King* v. *Stoddard, supra*, 28 Cal.App.3d at p. 711.) Here, however, Chabafy executed the guaranty agreement after dissolution of the partnership.

Tsakos points out that a presumption exists that an attorney who appears on behalf of a party has authority to do so. This presumption may be overcome only by a strong showing that the attorney had no authority. (See *Sarracino* v. *Superior Court* (1974) 13 Cal.3d 1, 13 [118 Cal.Rptr. 21, 529 P.2d 53]; *Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503, 523 [154 Cal.Rptr. 874].) Chabafy provided a declaration stating he had told the New York court and Tsakos's counsel he did not have authority to act on Juniper's behalf. However, the California trial court found Chabafy's declaration to be not credible. The issue of what Chabafy told the court in the New York action is not dispositive.

Juniper argues that it was deprived of a fair trial because Kohn had a conflict of interest in purporting to represent both Chabafy and the partnership. The California trial court failed to address this issue.

Attorneys bear a fiduciary relationship of the highest character to their clients, and may not assume positions inconsistent with the interests of their clients. (*David Welch Co.* v. *Erskine & Tulley* (1988) 203 Cal.App.3d 884, 890 [250 Cal.Rptr. 339].) "By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests. Nor does it matter that the intention and motives of the attorney are honest. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent. [Citation.]" (*Anderson* v. *Eaton* (1930) 211 Cal. 113, 116 [293 P. 788].)

When an attorney owes a duty of loyalty to two clients, it is impossible for him or her to advise either one as to a disputed claim against

the other. (*Potter* v. *Moran* (1966) 239 Cal.App.2d 873, 876 [49 Cal.Rptr. 229].) An attorney's simultaneous representation of clients with differing interests presents a classic situation of conflict. Each client is entitled to unimpaired loyalty of counsel; an attorney representing clients with conflicting or potentially conflicting interests may be tempted to favor the interests of one over the other. (*McClure* v. *Donovan* (1947) 82 Cal.App.2d 664, 666 [186 P.2d 718].)

Here, the conflict was actual. Diligent representation of Juniper required Kohn to raise the defense that Chabafy's execution of the guaranty agreement was outside the scope of his authority as a partner under the partnership agreement.[12] Conceivably, he should even have filed a cross-complaint by Juniper against Chabafy for fraud or indemnification. This defense would have worked to Chabafy's detriment. He could have been found liable not only to Tsakos, but also to Juniper for fraud. Moreover, the joint and several judgment against Chabafy and Juniper enabled Tsakos to seek to collect the entire judgment from partnership assets rather than from Chabafy's personal assets. However, in the answer Kohn filed, he raised only the defenses that applied to Chabafy.

 The circumstances under which Chabafy purported to bind the partnership to guaranty his personal obligation and then hired counsel to represent both himself and the partnership clearly gave rise to a conflict of interest between Chabafy and Juniper as to Chabafy's authority. (See *Hammett* v. *McIntyre* (1952) 114 Cal.App.2d 148, 157 [249 P.2d 885].) Dual representation under such circumstances resulted in the denial of a fair trial. (*Ibid.*; See also *Klemm* v. *Superior Court* (1977) 75 Cal.App.3d 893, 901 [142 Cal.Rptr. 509]; *Gregory* v. *Gregory, supra*, 92 Cal.App.2d 343.)[13]

The evidence was undisputed that neither Chabafy nor Kohn ever disclosed to Juniper's other general partners the facts which gave rise to the conflict of interest or sought their consent to dual representation. Both Hsia and Hong provided declarations stating they had never heard of the New York action and had had no contact with Kohn.

---

[12]Attorney Allen's conflict as cocounsel in the New York action was even more egregious. Apparently, he simultaneously represented Chabafy in Juniper's dissolution and accounting action against him in the California courts while purporting to appear as associated counsel for both Chabafy and Juniper in the New York action.

[13]Whether or not counsel breached a duty to clients "may be resolved as a matter of law if the circumstances do not permit a reasonable doubt as to whether [counsel's] conduct violate[d] the degree of care exacted of him. [Citations.]" (*Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 150 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].)

Even if consent to the dual representation had been obtained, however, at least one court has announced that a party may not consent to dual representation of conflicting interests at a trial when "there is an actual, present, existing conflict and the discharge of duty to one client conflicts with the duty to another. [Citations.]" (*Klemm* v. *Superior Court, supra,* 75 Cal.App.3d at p. 898.) The court explained, "As a matter of law a purported consent to dual representation of litigants with adverse interests at a contested hearing would be neither intelligent nor informed. Such representation would be per se inconsistent with the adversary position of an attorney in litigation, and common sense dictates that it would be unthinkable to permit an attorney to assume a position at a trial or hearing where he could not advocate the interests of one client without adversely injuring those of the other." (*Ibid.*)

■ Vacating a judgment for extrinsic fraud or mistake is an equitable remedy. If Tsakos had been an innocent third party misled to its detriment by Chabafy's actions and the dual representation of Chabafy and Juniper at trial, Juniper would be the appropriate party to bear the burden of failing to take effective steps earlier to wind up partnership affairs and terminate the partnership. Vacation of judgment is appropriate in this case, however, because Tsakos is not an innocent third party. As discussed above, Juniper had a meritorious defense against being held liable under the guaranty agreement. An examination of the partnership agreement would have revealed both that the partnership had dissolved upon the expiration of its term and that the partnership was not in the business of guaranteeing personal loans. Tsakos in fact obtained a windfall from the dual representation, in that it obtained a joint and several judgment against Juniper as well as Chabafy.

DISPOSITION

The judgment is reversed. Appellant shall recover costs on appeal.

Hollenhorst, J., and McDaniel, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied April 1, 1993.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.