Filed 6/20/25  Marriage of Corso CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of BETH and STEVEN CORSO. | |
| BETH CORSO, | D083670 |
| Respondent, | (Super. Ct. No. DN176044) |
| v. | |
| ANDREA CORSO, | |
| Claimant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Pennie K. McLaughlin, Judge.  Affirmed.

Grant, Kessler & Zunshine, Alexander J. Kessler and Phillip A. Zunshine for Claimant and Appellant.

Enenstein Pham Glass & Rabbat and Paul D. Toepel, Jr. for Respondent.

Claimant Andrea Corso[1] appeals a trial court's order denying her motion to vacate an order from a Connecticut superior court granting respondent Beth's motion for an affidavit of identity as well as two California judgments for money held in Andrea's bank accounts. Andrea contends the trial court should have vacated the Connecticut order, which gave rise to the California judgments, because the Connecticut court lacked personal and in rem jurisdiction over her and also failed to give her notice of the proceedings, thus violating her constitutional due process rights. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Judgment of Dissolution in Connecticut*

In 2011, upon their divorce, Steven and Beth set forth alimony and spousal support terms in a document titled "separation agreement," which was incorporated into a judgment of dissolution in Connecticut. In 2014, a California superior court granted Beth's motion to register the Connecticut judgment in this state, where Steven moved and married Andrea. Also that year, the California court denied Steven's motion to vacate the Connecticut judgment, and Andrea was joined as a party to the California action.

*Beth's Affidavit of Identity Motion in Connecticut*

In 2019, Beth moved for an "affidavit of identity" in the Connecticut action, arguing Steven had been using various aliases, including several

---

[1] Andrea is currently married to Steven Corso, who was previously married to Beth. As they all share the same last name, we address them by their first names to avoid confusion.

based on variations of Andrea's name.[2]  She supported her motion with approximately 90 pages of exhibits, including bank statements, checks, and California corporate statements of information.  Beth's motion stated she had sent copies of the motion to Steven by e-mail and regular mail.  Steven did not oppose the motion, and did not appear at the motion hearing in Connecticut, where Beth explained to the court that he had also failed to appear for any court proceeding in California since 2014, despite being properly served.  In 2020, the Connecticut court granted Beth's motion: "After a hearing, the court finds good cause to grant [Beth's] motion for order. [Beth] may proceed against any of the following named persons or entities to satisfy claims owed to her by [Steven] for unpaid alimony[.]"  In 2021, following a hearing, the Connecticut court issued an order finding Steven owed Beth $1,108,171, including $884,938 in arrears on his alimony obligations.

In August 2021, the California court granted Beth's application to register two Connecticut judgments regarding Steven's arrears, based on the affidavit of identity order, which named Andrea and other persons and entities as Steven's aliases.  One judgment stated Steven owed $904,091.45, and the other stated he owed an additional $215,485.86.  Beth subsequently obtained writs of execution and levied more than $78,000 from Andrea's bank accounts.

---

[2]    Beth represented to the Connecticut court that some of the aliases Steven used included "Stephen and Andrea Corso," "Steven and Andrea Corso," "Steve and Andrea Corso," "Andrea Corso," "Andrea L. Corso," "Andrea L. Lewis," "Andrea Lewis," "Andrea Carter," "Andree L. Carter," "Andrea Carter Lewis," and "Andree Demetricia Lewis."

*Andrea's Motion to Intervene and Dismiss the Connecticut Action*

In early 2023, Andrea, who identified herself as a "non-party," filed in the Connecticut action a "motion to intervene for the purpose of prosecuting motion to dismiss [Beth's] motion for affidavit of identity for Steven . . . ." Andrea argued, inter alia, the Connecticut court lacked personal jurisdiction over her, and she received no notice or service of process. In June 2023, Andrea also filed in Connecticut a motion labeled, "Non-party's motion to stay discovery pending adjudication of motion to dismiss and/or vacate, post judgment." In June 2023, the Connecticut court denied Andrea's motion to dismiss the action and stay discovery, reasoning Andrea was not a party to the action.

At a hearing on Andrea's motion to intervene, Beth argued in effect that the court's affidavit of identity order was final because Steven did not appeal it. The Connecticut court ruled that was not a valid objection, and granted Andrea's motion, ruling from the bench: "The issue today is whether or not [Andrea] should be part of this case, because there's an order that her name is—to the extent that it's attached to any asset, can be accessed by [Steven] and ultimately by creditors. So, it would seem to me that [Andrea] can make a case, factually, that her name should not continue to be available to creditors . . . . And for that, she has to be able to intervene." The court acknowledged, "there will have to be evidence presented, on [Andrea's] behalf, that she is not holding any funds that have been deposited by [Steven], obviously."

In July 2023, Andrea withdrew her motion to vacate the affidavit of identity order that she earlier claimed had added her as a judgment debtor in the action between Beth and Steve. She provided no explanation for her decision.

*Andrea's Motion in California to Vacate the Connecticut Judgment*

In March 2023, Andrea moved the California court to vacate the Connecticut court's affidavit of identity order, which had permitted Beth to enter the two judgments in California for alimony and other amounts that Steven owed. Andrea argued, "Because the [Connecticut] court never had personal jurisdiction over Andrea, the order is void. Because the order is void, this court must vacate the [California] judgments as to Andrea."

Beth opposed the motion, arguing Andrea was taking logically inconsistent positions: "[Andrea] is alleging very clearly in her Connecticut pleadings that she is a non-party and in fact she filed a motion to intervene concurrently with her motion to dismiss. However, she is alleging here in her California motion to vacate that she was made a party to the case in Connecticut without an appropriate long-arm statute and having never purposely availed herself or connected herself with the State of Connecticut." Beth also argued Andrea had other legal remedies available to her in California or in Connecticut, including challenging the validity of the levies against her bank accounts.

In September 2023, the California court, having heard arguments by counsel and taken judicial notice of the Connecticut records, denied Andrea's motion, pointing out she was never deemed a party to the Connecticut action: "[T]he affidavit of identity action is not a process by which a Petitioner can seek to add new debtors to the judgment. On the contrary, it is an action to seek to add aliases of persons and entities used by [Steven] to receive or hold his assets, thereby shielding them from collection. Under this scenario of adding aliases, the Connecticut Court did not have to determine if it had personal jurisdiction over the names and entities behind [Steven's alleged

5

aliases]. Personal jurisdiction over the judgment debtor, Respondent, is all that is required."

The trial court acknowledged that in Beth's attachment to her motion seeking recognition of the Connecticut judgment she identified Andrea as a "judgment debtor"; however, it concluded, "the biggest problem lies with the California forms not listing the category of non-party third party alias of the judgment debtor. That's what it should properly state." It ruled the Connecticut court found that Andrea remained a non-party to the Connecticut action and therefore that court's personal jurisdiction over Andrea was not required. The trial court further pointed out Steven had received notice of the affidavit of identity action and did not contest it. Finally, the trial court concluded its denial of Andrea's motion to vacate the affidavit of identity order still left her with other options for challenging the levies on her funds, either by filing a claim of exemption or a motion to quash the writs of execution in California.

## DISCUSSION

Andrea contends the California court should have vacated the Connecticut court's affidavit of identity order as well as the two California judgments that Beth had registered against her pursuant to that order. Relying on United States Supreme Court case law, including *Penoyer v. Neff* (1877) 95 U.S. 714 and *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, as well as Connecticut's long-arm statute (Conn. Gen. Stat. § 52-59b(a)), she reiterates she has never been in Connecticut or done business there, thus the Connecticut court lacked personal jurisdiction over her. She further contends that even if she had minimum contacts with Connecticut to satisfy personal jurisdiction requirements, the court there violated her due process rights by not providing her notice and an opportunity to object to

6

Beth's motion for the affidavit.  She adds the Connecticut court also lacked in rem jurisdiction over her as she never owned property there.

## I. *Applicable Law*

The Sister State Money Judgment Act provides:  "A judgment entered . . . may be vacated on any ground which would be a defense to an action in this state on the sister state judgment."  (Code Civ. Proc., § 1710.40, subd. (a).)  This court has interpreted that statute to include judgments rendered in excess of jurisdiction.  (*Airlines Reporting Corp. v. Renda* (2009) 177 Cal.App.4th 14, 20.)  "Not later than 30 days after service of notice of entry of judgment pursuant to Section 1710.30, . . . the judgment debtor, on written notice to the judgment creditor, may make a motion to vacate the judgment under this section."  (Code Civ. Proc., § 1710.40, subd. (b).)  However, this deadline is inapplicable to challenges based on lack of personal jurisdiction.  (*Airlines Reporting Corp.*, at p. 20.)

Under the full faith and credit clause (U.S. Const., art. IV, § 1), "a judgment entered by one state must be recognized by another state if the state of rendition had jurisdiction over the parties and the subject matter and all interested parties were given reasonable notice and opportunity to be heard."  (*World Wide Imports, Inc. v. Bartel* (1983) 145 Cal.App.3d 1006, 1010, citing *Durfee v. Duke* (1963) 375 U.S. 106, 116.)  Courts refer to jurisdiction over the parties and subject matter as "fundamental jurisdiction," and where this is lacking there is an entire absence of power to hear or determine the case.  (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 538.)  "Judgments or orders by a court that lacks jurisdiction in this fundamental sense are void.  [Citation.] Objection may be raised at any time since the parties cannot confer

7

jurisdiction by consent; a judgment rendered in the absence of fundamental jurisdiction is simply a nullity." (*Ibid.*)

This court has pointed out in *Casey v. Hill* (2022) 79 Cal.App.5th 937: " 'Moreover, " '[while] it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of [the United States Supreme] Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.' " ' [Citation.] [¶] Accordingly, '[u]pon a claim that a foreign judgment is not entitled to full faith and credit, inquiry into the legality of proceedings in a court of a sister state is narrowly circumscribed by case law. The permissible scope of inquiry upon such a party is limited to whether the court of rendition has "fundamental" jurisdiction [citation]. In other words, a judgment entered by one state must be recognized by another state if the state of rendition had jurisdiction over the parties and the subject matter and all interested parties were given reasonable notice and an opportunity to be heard.' " (*Casey, supra,* at p. 959.)

The party moving to vacate entry of a sister state judgment has the burden to show by a preponderance of the evidence that she is entitled to relief. (*Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 88.) " 'On appeal of the court's ruling [vacating entry of a sister state judgment], we apply settled principles of appellate review. [Citations.] As this matter involves a review of the trial

8

court's determination of in personam jurisdiction, "we will not disturb the court's factual determinations 'if supported by substantial evidence.' [Citation.] 'When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record.' " ' " (*Casey v. Hill, supra*, 79 Cal.App.5th at p. 961.)

## II. *Analysis*

These fundamental points are not in dispute: The Connecticut court retained jurisdiction over Steven and Beth and the matter of their separation agreement. Beth represented in her motion that she sent Steven notice of it. He did not appear at the hearing to oppose it. Andrea was not a party to the Connecticut action; rather the court found that Steven used her name as an alias. Andrea did not receive formal notice of the affidavit of identity action. Therefore, under the case law cited above, we exercise our independent review of the record and the trial court's ruling.

We conclude the trial court did not err in denying Andrea's motion to vacate the Connecticut court's affidavit of identity order. Steven, as a party to the action, had standing to challenge Beth's motion for affidavit. But despite the fact he was properly noticed, he did not appear in the proceedings. Steven had the opportunity to object to the evidence Beth adduced showing he used a form of Andrea's name to shield money he owed to Beth, but he did not object on any ground. The Connecticut court determined that Beth's evidence sufficed to show Steven was using Andrea's name as an alias to secrete money instead of paying his debt to Beth. On appeal, Andrea has not set forth a proper argument that the Connecticut court's order lacked an evidentiary basis. In any event, any such error would be immaterial: "As long as the sister state court had jurisdiction over the

9

subject matter and the parties, a sister state judgment is entitled to full faith and credit 'even as to matters of law or fact erroneously decided.' " (*Bank of America v. Jennett* (1999) 77 Cal.App.4th 104, 118; *Milliken v. Meyer* (1940) 311 U.S. 457, 462 ["[T]he full faith and credit clause of the Constitution precludes any inquiry into the . . . logic or consistency of the decision, or the validity of the legal principles on which the judgment is based"].)

The Connecticut court has maintained that Andrea was not a party, thus she was owed no personal notice of the affidavit proceedings. Although Beth in the attachment to her California motion seeking to enforce the Connecticut judgment referred to Andrea as a "judgment debtor," that term was never used in Connecticut. In apparent recognition of her nonparty status there, Andrea moved to intervene in the Connecticut action after the affidavit order was issued. The Connecticut court granted Andrea's motion, stating she had the right to present evidence showing Steven was not improperly depositing money in her bank accounts to shield his funds from the alimony judgment. But before the hearing in Connecticut could take place on Andrea's opposition to the affidavit order, she abandoned her participation in the case. Under these circumstances, Andrea cannot be heard to complain that the Connecticut court lacked jurisdiction over her. Accordingly, the trial court did not err in denying Andrea's motion to vacate the Connecticut court judgment. As a practical matter, if the trial court had granted Andrea's motion, thus allowing this case to bounce back and forth between the California and Connecticut courts, it would only permit Steven to continue evading the alimony judgment and other debts that he has failed to pay for more than a decade.

Finally, Andrea has not challenged the trial court's declaration that while it denied Andrea's motion to vacate the judgments, she still has

remedies available to her in California; specifically, she can file a claim of exemption or a motion to quash the writs of execution.

## DISPOSITION

The judgment is affirmed.  Beth Corso is awarded costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


KELETY, J.

11